by him a sale of the property in question by *Coppack*, and himself, to the plaintiff, stands as the naked case of a vendor coming to sustain, by his own testimony, the title of his vendee, against a stranger claiming adversely, which cannot be permitted.

*Evans* is clearly interested on account of his implied warranty, in supporting the plaintiff's action, and his testimony was properly rejected.

JUDGMENT AFFIRMED.

——————

VEASEY's Adm'r. *D. B. N. vs.* BASSETT's Adm'rs.—June, 1822 *(a)*.

In an action of *assumpsit* in consideration of forbearance to sue a bond dated in 1793, payable the 1st of November 1798, whereby the bond became barred by the act of limitations. The writ was issued in 1817, and the defendant pleaded limitations. Evidence was given that in 1814 and 1815, the agent of the plaintiff applied to the defendant, with the bond, to get him to settle it, either by paying the money, or renewing the bond, and the defendant promised that he would pay the money, and hoped for further indulgence; that he had made a payment for which he had not been credited, and that he would call on the plaintiff and renew the bond. There were sundry payments endorsed on the bond, the last in 1815; the original bond was lost, and copy of it, with endorsements, was proved. Also an order drawn by the plaintiff on the defendant in 1814, which was paid by him—*Held*, that the evidence was sufficient to support the action. That it could be supported, although the jury might not believe that the agent of the plaintiff was authorised to forbear to sue the defendant, and that he did forbear to sue, and that in consequence thereof, the defendant promised to pay him, and although the promise to pay of the defendant, made to the agent, was in consequence of the plaintiffs' previous indulgence.

The court refused to direct the jury, that the plaintiff must satisfy them by evidence of the correct balance due from the defendant to him, and that the evidence of the promise in 1815, and the other evidence, was not sufficient to ascertain the balance.

APPEAL from *Kent* County Court. This was an action of *assumpsit* brought by the appellees against the appellants. The declaration alleged, "that whereas the said L, (the defendant's intestate,) in his lifetime, on the 1st day of November 1793, by his certain writing obligatory, sealed with the seal of

*(a)* This case was omitted to be published in its proper place.

the said L, bearing date the same day and year aforesaid, acknowledged himself to be held and firmly bound unto the said R, (the plaintiffs' intestate,) in his lifetime, in the full and just sum of £1380 17 2, with a condition thereunder written for the payment of £690 8 7, with interest thereon, from the date thereof, on or before the 1st day of November 1798, which sum of £690 8 7, with the interest thereon, the said L did not pay to the said R, on or before the 1st day of November 1798, according to the form and effect of the said condition, whereby the said writing obligatory became forfeited. And afterwards, that is to say, on the 1st day of January 1815, at Kent county aforesaid, he the said R intended to implead and prosecute the said L, upon the said writing obligatory, forfeited in manner aforesaid, of which said intention the said L having notice, the said L the day and year last aforesaid, at the county aforesaid, in consideration that the said R would forbear from thence to presecute his said suit upon the said writing obligatory against the said L, he the said L then and there undertook and faithfully promised the said R, that he the said L would well and truly content and pay the said R the said sum of £690 8 7, with interest thereon, when he should be thereto required. And the said plaintiffs, in fact say, that the said R confiding in the said promise and undertaking of the said L, did from thence forbear to prosecute his said suit against the said L, upon the said writing obligatory. And whereas, also the said L, afterwards, to wit, on the same 1st day of November; in the year of our Lord 1793, at Kent county aforesaid, by his certain other writing obligatory, sealed with the seal of the said L, bearing date the same day and year aforesaid, acknowledged himself to be held and firmly bound unto the said R, in the full and just sum of £1380 17 2, with a condition thereto subscribed, that if the said L should well and truly pay to the said R, the just and full sum of £690 8 7, with legal interest thereon from the date of the said writing obligatory, on or before the 1st day of November 1798, that then the said last mentioned writing obligatory should be void and of noneffect. Which last mentioned sum of £690 8 7, with the interest thereon, as aforesaid, the said L did not pay to the said R, on or before the said 1st day of November 1798, according

to the form and effect of the said last mentioned condition, whereby the said writing obligatory became forfeited. And the plaintiffs further say, that the said L, at divers days and times, after the forfeiture of the said last mentioned writing obligatory, and before the making of the promise and assumption hereafter mentioned, paid and satisfied to the said R divers sums of money, amounting in the whole to £100, in part of the sum so as aforesaid due and owing upon the said last mentioned writing obligatory; and that at the special instance of the said L, the said R had, from the time of the forfeiture of the said last mentioned writing obligatory, continually forborne for twelve years and more to-prosecute his suit upon the said last mentioned writing obligatory against the said L, to wit, at *Kent* county aforesaid; by reason whereof the said R was precluded from having and maintaining his said action against the said L, upon the last mentioned writing obligatory, according to the provision of a certain act of assembly of the (then province, now) state of *Maryland*, passed at a session thereof begun and held at the city of *Annapolis*, the twenty-sixth day of April in the year of our Lord 1715, entitled, "An act for the limitation of certain actions for avoiding suits at law." In consideration of all which said premises the said L afterwards, to wit, on the 1st day of January in the year of our Lord 1815, at *Kent* county aforesaid, undertook and then and there faithfully promised the said R, to pay to the said R, when afterwards he should be thereto required, so much money as then remained unpaid of the said last £690 8 7, with interest thereon, from the date of the said writing obligatory. And the plaintiffs further in fact say, that on the day and year last above mentioned, the sum of £590 8 7, remained due and unpaid to the said R, out of the said last mentioned sum of £690 8 7, whereof the said L, afterwards, that is to say, on the same day and year last aforesaid, at the county aforesaid, had notice." There was also a count for £590 8 7, the like sum of money had and received. The original writ was issued on the 10th November 1817. The defendant pleaded *non assumpsit, non assumpsit infra tres annos, actio non accrevit infra tres annos*, and *plene administravit*, to which there were the general replications and issues.

1. At the trial the plaintiffs proved by J. C, a competent witness, that he the witness, some time in March 1814, as the agent of *Richard Bassett*, the plaintiffs' intestate, called on *Lambert Veasey*, the defendant's intestate, at his house in *Kent* county, for the purpose of getting him to settle off his bond to *Bassett*, either by paying the money, or by renewing his bond. That *Veasey* answered there was a credit that he was entitled to for wheat, which he had delivered to *Bassett*, which he could not then ascertain, but that he would in a short time go up to *Cecil* county and see Mr. *Bassett*, and renew the said bond. The witness further proved, that some time in March 1815, he called again on *Veasey* for the purpose of getting the bond settled, and observed to *Veasey* that he had not complied with his promise in coming up to *Cecil* county and renewing his bond, to which the said *Veasey* said, that the reason why he did not do so, was that *Bassett* had drawn an order on him in favour of *G. W. Thomas*, which he had paid, and which had taken all his money, and that he the said *Veasey* would be up in about three weeks and renew his bond; and he further told the witness that *Bassett* need not be uneasy about his debt, for that it was very safe; that the farm he then lived on belonged to him, and was paid for, and that he *Veasey* would pay him to the uttermost farthing what he owed him, as *Bassett* had been very indulgent to him, and he hoped he would still indulge him further, and that he was and had been the best friend he had in the world, and that he should never lose any thing by him. The witness further proved that he had no orders from *Bassett* to sue, nor did he say any thing about it. The plaintiffs also proved that the original bond, the execution of which was proved by J C, of which the paper herein mentioned is a copy, was in the possession of the said J C, the witness, and produced by him to *Veasey* at the time of the abve conversations stated to the witness, and that the said bond has since been lost, and that the copy of the bond, and of the endorsements which he produced, was a true copy. It purported to be a copy of a joint and several bond, executed on the 1st of November 1793, by *Lambert Veasey*, *William Veasey* and *John Makin*, to *Richard Bassett*, in the penalty of £1380 17 2, money of *Pennsylvania*, conditioned for the payment of £690 8 7, on

or before the 1st of November 1798, with legal interest. A payment of £18 5 0 was endorsed as made on the 15th of October 1794; also £64 2 0 on the 15th of April 1796; also $39 72 paid *G. W. Thomas,* on the 12th of December 1814, and $133 59 paid to *R. C. Lusby,* on the 20th of February 1815. The plaintiffs further proved by *G. W. Thomas,* that on the 27th of October 1814, he called on *Bassett* for his taxes, which he paid to the witness in part, and gave him an order for the balance on *L. Veasey,* for the sum of $39 72. That he called on *Veasey* afterwards, he does not know when, and presented him with the said order, which *Veasey* paid, and observed to the witness that he owed *Bassett,* and that he had been one of the best friends he ever had, and had acted a fatherly part by him. The defendant then moved the court to direct the jury, that the evidence given on the part of the plaintiffs, was not sufficient to support the issues joined on their part. But the Court [*Purnell,* A. J.] refused to give the direction. The defendant excepted.

2. The defendant then prayed the court to direct the jury, that if they should believe the evidence on the part of the plaintiffs to be true, it is not sufficient to support the issues on their part. Which instruction the court refused to give. The defendant excepted.

3. The defendant then prayed the court to direct the jury, that unless they should believe from the evidence that J C the witness was authorised by *Bassett,* the plaintiffs' intestate, to forbear to sue the defendant's intestate, and that he did forbear to sue, and in consequence thereof the defendant's intestate did promise to pay him, that this action cannot be supported. Which instruction the court refused to give. The defendant excepted.

4. The defendant then prayed the court to direct the jury, that if they shall believe from the evidence, that the declarations of the obligor made to the witness J. C, were in consequence of *Bassett's* previous indulgence, that this action cannot be maintained. Which instruction the court refused to give. The defendant excepted,

5. The defendant further prayed the court to direct the jury, that the plaintiffs must satisfy them, by evidence, of the correct balance due from *Veasey* to *Bassett*, and that the general evidence given by J. C. the witness, of the assumption in 1815, and also the evidence of Doctor *Thomas*, the witness, together with all the testimony given, were not sufficient to ascertain the balance, even if the jury believed all the testimony to be true. Which instruction the court refused to give. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued at June term last, before BUCHANAN, JOHNSON, MARTIN, and DORSEY, J.

*Carmichael,* for the Appellant.

*Chambers,* for the Appellees, cited, 1 *Com. Cont.* 9, 10, 23, 25. 1 *Saund.* 264, *(note* 1.*)* 1 *Chitty Plead.* 95, 96. *Hawkes vs. Saunders,* 1 *Cowp.* 290. *Atkins vs. Banwell,* 2 *East,* 505. *Inhabitants of Andover vs. Inhabitants of Salem,* 3 *Mass. Rep.* 438. 2 *Saund.* 137, *(note* 2.*)* *Wennall vs. Adney,* 3 *Bos. & Pull.* 249, *(note a.)* *Beach vs. Lee,* 2 *Dall. Rep.* 257. *D'Utricht vs. Melchor,* 1 *Dall. Rep.* 428. *Heard vs. Wadham,* 1 *East,* 630. *Baird vs. Blaigrove,* 1 *Wash. Rep.* 170. *White vs. Parkin,* 12 *East,* 578. *Foster vs Allanson,* 2 *T. R.* 479, 483. *Barnes vs. Headley,* 2 *Taunt.* 184. 2 *Com. Cont.* 557. *Fowler vs. Sheaser,* 7 *Mass. Rep.* 14. *Trueman vs. Fenton,* 2 *Cowp.* 544. *Elting vs. Vanderlyn,* 4 *Johns. Rep.* 237. *Cole vs. Saxby,* 3 *Esp. Rep.* 159. *Davies vs. Smith,* 4 *Esp. Rep.* 36.

At this term,

*Curia adv. vult.*

JUDGMENT AFFIRMED.

————

PIKE *vs.* DASHIELL's Adm'r.—June, 1823 *(a.)*

Separate actions cannot be maintained on a joint promissory note made by two, since the act of 1811, *ch.* 161.

APPEAL from *Somerset* County Court. This was an action of *assumpsit* on a *joint* promissory note executed by *Dashiell*

*(a)* This case was omitted to be published in its proper place.