Juilliard & Co., *et al. vs.* Orem's Ex'rs.

---

A. D. JUILLIARD & Co., and others *vs.* JOHN M. OREM's Executors. JOHN M. OREM's Executors *vs.* A. D. JUILLIARD & Co., and others.

*Construction of Articles of Partnership—Executor—Partnership Account—Limitations—Interest.*

By the original articles of partnership between J. M. O., W. M. O., and G. B. C., made in 1865, the capital of the business was fixed at $75,000, and was to be furnished exclusively by J. M. O., who was to be allowed interest thereon, and the same was to be at the risk of the business. In January, 1871, a new agreement was made, by which, among other things, it was provided as follows: "1st. The interest of each partner in the profits and liabilities of the firm shall be equal to each one-third,—that is, after the expenses, interest on capital, and losses of all kinds shall have been paid, the profits, if any, shall be divided equally between the three partners,—thirty-three and one-third of one per cent. to each. If the profits of the business shall not have been sufficient to pay expenses, interest and losses, then each partner shall pay to the firm his proportion of the deficiency. 2nd. J. M. O. will furnish the capital for conducting the business, but shall not be required to furnish a specific amount. He shall receive for interest and risk of loss, the capital being placed at the risk of the business, at the rate of nine per cent. per annum payable semi-annually." HELD:

1st. That it was the intention of the latter agreement to put the partners as near as possible on a footing of equality; and for this purpose the partner who contributed the capital was to be paid by

the firm interest for the use of his money, and all the partners were to bear equal proportions of the losses by which it might be impaired.

2nd. That this was the intention to be derived from the consideration of the whole instrument, notwithstanding the clause in the second paragraph providing that J. M. O. "shall receive for interest and risk of loss,—the capital being placed at the risk of the business,—at the rate," &c.; and which, if considered without reference to the context, would justify a different conclusion.

The partnership was dissolved in 1876 by the death of J. M. O. There was no settlement of the partnership affairs, and in 1888 G. B. C. one of the surviving partners, who was also one of the executors of J. M. O. made an assignment for the benefit of his creditors. It was then found from an examination of the books of the firm that G. B. C. was indebted to the estate of J. M. O. in a large amount for loss of capital. HELD:

1st. That G. B. C. as one of the executors ought to have given in this claim against himself as assets of the estate of J. M. O. in the Orphans' Court, and of course ought to have paid it. And being payable by himself in his individual capacity to himself in his fiduciary capacity, no statute of limitations applied to the case.

2nd. That the claim was not due and demandable until an account of the partnership was stated, and a balance struck; but from the time that was done the claim ought to bear interest.

APPEALS from the Circuit Court of Baltimore City.

The Court below (DENNIS, J.,) passed an order ratifying the claim of the executors of John M. Orem, deceased, allowed in the auditor's accounts, and dismissing and disallowing the exceptions thereto, except as to the item of $6085.44, being for ten years' interest on the principal sum of $10,140.44, due by George B. Chase as his proportion of the losses resulting from the business of John M. Orem & Co. which item was disallowed. From this order both parties appealed. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, IRVING, BRYAN, and McSHERRY, J.

*Fielder C. Slingluff*, for A. D. Juillard & Co., and others.

*Nicholas P. Bond*, and *Robert D. Morrison*, for Orem's executors.

BRYAN, J., delivered the opinion of the Court.

The question in this case turns on the construction of certain articles of partnership. John M. Orem, W. Morris Orem and George B. Chase in January, 1865, by written articles entered into a commercial partnership for the term of three years. In February, 1868, they agreed in writing to continue their partnership business indefinitely, without any stated limit in point of time; and in January, 1871, another written agreement was made which changed in some important respects the original articles of partnership. Throughout these successive changes the name of the firm continued to be John M. Orem, Son & Co. John M. Orem died in April, 1876, and the partnership was dissolved by his death. It is alleged that the losses of the firm in business amounted to more than thirty thousand dollars, and that the other partners are each liable to make good one-third of this amount.

By the original articles the capital in the business was fixed at seventy-five thousand dollars, and it was stipulated that it should be furnished exclusively by John M. Orem. There was also this clause in the articles, which we quote in the language used: "It is further agreed, that the said capital is to be and remain at the risk of the business, and if any loss or losses shall be incurred in the due and proper management of the business, whereby the capital shall be

diminished, such loss or losses shall be borne by the said John M. Orem, without any right to contribution from either of his said partners, beyond the amount of profits to which they would otherwise respectively be entitled. But it is further understood and agreed, that if any loss shall occur in said business from the wilful neglect or blamable fault of the said other partners, or either of them, then the persons or person guilty of such neglect or default, shall be answerable in their or his individual capacities or capacity, to the said John M. Orem in his individual capacity for the whole amount of such loss. Interest on amount of said capital is to be paid semi-annually to the said John M. Orem out of the profits of the business before any division of profits is made." The second agreement stated that W. Morris Orem and Chase were to have the privilege of withdrawing by giving six months notice, and it expressly re-affirmed the terms and conditions of the original articles in other respects. But in the agreement of January, 1871, changes were made which we quote, as far as they affect the question in this case: "1st. The interest of each partner in the profits and liabilities of the firm shall be equal—to each one-third—that is, after the expenses, interest on capital, and losses of all kinds shall have been paid, the profits, if any, shall be divided equally between the three partners—thirty-three and one-third of one per cent. to each. If the profits of the business shall not have been sufficient to pay expenses, interest and losses, then each partner shall pay to the firm his proportion of the deficiency. 2nd. John M. Orem will furnish the capital for conducting the business, but shall not be required to furnish a specified amount. He shall receive for interest and risk of loss,—the capital being placed at the risk of the business,—at the rate of nine per cent. per annum, payable semi-annually." When merchants

enter into a partnership, and contribute their money to its assets, they expect to incur the hazards of commercial business, they enjoy the advantages of success, and they endure the consequences of failure in proportion to the amount of their ventures. Each partner takes the risk of losing the capital which he has invested in the enterprise, and does not look to his associates to make reimbursement to him. But, as in other cases, they may by mutual agreement increase or diminish their responsibilities to each other. In the present case, the rights and liabilities of the partners were very much varied by the different agreements which they made with each other. According to the first one, Morris Orem and Chase were to receive each twenty per cent. of the clear profits, and John M. Orem sixty per cent.; and the two first named were expressly exempt from liability for losses, except such as occurred from "wilful neglect or blamable fault." While by the third, it was declared that the interest of each partner in the profits and liabilities should be equal; and this was particularly explained to mean that the net profits were to be divided equally, and if the profits were not sufficient to pay expenses, interest and losses, each partner was to pay his proportion of the deficiency. It is difficult to see what losses are meant if those diminishing the capital are not included in this stipulation. The words of the article are "losses of all kinds." Suppose the firm should begin the year with a capital of sixty thousand dollars, and at the end of the year, after the various vicissitudes of fortune, the assets should amount to only forty thousand dollars; this result would certainly indicate a loss of twenty thousand dollars. It could not be described in any other terms. If at the end of the year, after paying the expenses of the business, the assets of the firm were increased, there would

470          MARYLAND REPORTS.

Juilliard & Co., et al. vs. Orem's Ex'rs.

be a profit; if they were diminished, there would be a loss. It was the intention of the third agreement to put the partners as near as possible on a footing of equality. For this purpose, the partner, who contributed the capital was to be paid by the firm, interest for the use of his money; and all the partners were to bear equal proportions of the losses by which it might be impaired. In this way the burdens and benefits of the business were made as nearly equal as possible under the circumstances. There is a passage in the second clause of the third agreement which, if considered without reference to the context, would justify a different conclusion from that which we have reached. It is in these words: "He shall receive for interest and risk of loss,—the capital being placed at the risk of the business,—at the rate of nine per cent. per annum, payable semi-annually." We think, however, that we must look at the whole instrument, and ascertain from its scope and general purpose, the meaning and intention of the parties who executed it.

Morris Orem, George B. Chase and William H. West, are the executors of John M. Orem. There has never been a settlement of the partnership affairs of John M. Orem, Son & Co. George B. Chase made an assignment for the benefit of his creditors in January, 1888. After this assignment, a statement of accounts with him, founded on an examination of the books of the firm, showed that the loss of capital was thirty thousand four hundred and thirty-seven dollars and twenty cents; and one-third of this sum was charged to him.

It was also shown that on the first of January, 1878, Chase was on another account indebted to John M. Orem's estate in the additional sum of two thousand dollars. In the auditor's account, making distribution of Chase's trust estate, a dividend on these sums was allowed to the other executors of John M. Orem

Juilliard & Co., *et al. vs.* Orem's Ex'rs.

who prosecuted the claim.   Exceptions were filed by
other creditors of Chase, and the Court below over-
ruled them, except as to the item of interest on Chase's
.share of the loss of capital.   As one of Orem's execu-
tors, Chase ought to have given in these claims against
himself  as assets of the decedent's estate in stating
the accounts in the Orphans' Court; and of course
ought to have paid them.   They are payable by him-
self in his individual capacity to himself in his fidu-
ciary capacity.   No statute of limitations applies to
such a case.   Interest was properly allowed on his per-
sonal indebtedness to his decedent's estate.   But until
an account was stated of the partnership losses, and
the amount chargeable to him was ascertained and
adjusted, it was not demandable from him.   No suit
could have been maintained against him for it, even
if he had not been one of the executors of the credi-
tor partner.   The indebtedness could not be legally
known to exist, until an account was stated and a
balance struck.   It was then due and payable; and if
withheld ought from that time under ordinary circum-
stances to bear interest.   We agree with the Circuit
Court.   As both parties appealed, the costs in this
Court must be equally divided between them.

*Order affirmed, and*
*cause remanded.*

(Decided 27th March, 1889.)