---

(39 Misc. Rep. 675.)

In re TIMERSON et al.

(Surrogate's Court, Cayuga County. January, 1903.)

1. ADMINISTRATION—DEBTS DUE BY DISTRIBUTEES.

    Administrators can retain from shares of distributees the amount of outlawed promissory notes owing the intestate by the distributees at the time of his death.

2. SAME—GIFT.

    That an intestate in his lifetime expressed an intention to forgive distributees their debts does not constitute a gift, where he never surrendered to them the notes representing the debts.

Proceedings on the settlement of the account of Frank Timerson and Genie Timerson, administrators of Charles W. Timerson, deceased. Decree rendered.

F. S. Coburn, for administrators.

John L. Hunter, for Charles A. and Ned Timerson, contestants.

Horton & Brown, for William H. Timerson and Marian Murphy.

WOODIN, S. The above-entitled proceeding was instituted by Frank Timerson and Genie Timerson for a judicial settlement of their accounts as administrators, etc., of Charles W. Timerson, deceased. An answer containing objections to the account was filed by Charles A. and Ned Timerson. The above-named deceased died intestate on August 7, 1901, leaving Genie Timerson, his widow, and Frank A. Timerson, William H. Timerson, Marian Murphy, Ned Timerson, and Charles A. Timerson, his children, and only heirs at law. Letters of administration were issued out of this court to said Genie and Frank A. Timerson on the 15th of August, 1901. The administrators charged themselves in their account, as part of the assets of the deceased, with certain promissory notes in favor of the deceased, made by Charles A. Timerson and Ned Timerson, respectively, more specifically set forth as follows: One note, dated March 22, 1889,

¶ 1. See Executors and Administrators, vol. 22, Cent. Dig. § 1173.

for $145, made by Ned Timerson; one note, dated August 1, 1895,
for $124, made by Ned Timerson; one note, dated April 20, 1889, for
$250, made by C. A. Timerson; one note, dated September 2, 1889,
for $200, made by C. A. Timerson; one note, dated April 1, 1891,
for $150, made by C. A. Timerson; and the account contains the
further statement that these notes should be deducted from the re-
spective shares of said parties in the estate. The answer alleges that
these notes are not valid or subsisting claims against the makers,
and that they are not liable for the payment of the same, and that
all of said notes are barred by the statute of limitations; and, further,
that the deceased did not intend to collect or enforce payment of said
notes, or any of them, and regarded said notes as having been paid,
and did not hold them in his possession as evidence of a collectible
debt or obligation due to him. Upon this issue, as raised, proof has
been offered by the contestants and other parties to this proceeding.

Taking up first the allegation in the answer that the notes are
barred by the statute of limitations, I believe the rule of law to be
well settled in cases of this kind that the administrators have a lien
and a right of detention upon the distributive shares sufficient to pay
the indebtedness to the estate, and it is the duty of the court to make
a decree accordingly. The rule is based upon the theory that the
statute of limitations does not raise a presumption of payment, but
merely creates a bar to the remedy by action. In this proceeding
the administrators are not seeking to recover the claims, and, as no
presumption of payment arises from the lapse of time, they are as-
sets in the hands of the administrators, for which they must account.
It is not a mere question of legal offset, but of equitable lien and right
of retainer, and the right depends upon the principle that the dis-
tributee is not entitled to his distributive share while he retains in his
own hands a part of the fund out of which that and other distributive
shares ought to be paid. Rogers v. Murdock, 45 Hun, 30. Taking
this view of the matter, that leaves to be decided, as the sole remain-
ing question, the contestants' allegation that the decedent did not
intend to collect or enforce payment of said notes, or any of them,
and regarded them as having been paid, and did not hold them in his
possession as evidence of a collectible debt or obligation due him.
To support this contention, contestants have offered proof tending
to show that the deceased had forgiven or condoned the indebtedness.
It appears from the proof that the deceased died with these notes
in question in his possession, and the administrators found them
among his papers. There being no question but what the notes were
valid in their inception, in the absence of any proof showing payment
or gift of the indebtedness the administrators would be entitled to the
usual presumption which the possession of these evidences of indebt-
edness would raise, and could properly ask for a decree directing
that these notes be deducted from the distributive shares of the
makers. The proof offered by the contestants consists of declara-
tions made by the deceased to certain of his friends and neighbors,
and it is to be determined whether these declarations overcome the
legal presumption to which the administrators are entitled by virtue
of their possession of these uncanceled notes. These declarations

must show either payment or a gift. Mr. Bloomingdale, a neighbor and friend of the deceased, testifies that he had a talk with the deceased in the spring of 1901, in which the deceased stated "that he had settled with his children, and that they were square now; that he was going to give that to them; that he was going to call square what Frank, Ned, and Albert owed him, and was not ever going to ask them for it." Mr. Bloomingdale states that the deceased did not refer to any notes, or give any figures or amounts. Mr. Herson J. Lewis testifies to a conversation with the deceased in the spring of 1901, in which the deceased stated "that he did not expect to enforce payment of the notes, for the reason that he could not collect them." In this talk the deceased said, in answer to Mr. Lewis' question why he did not deliver up the notes, that "it would keep them better-natured if I hold them awhile." Mr. Charles Myers testifies that he had a talk with the deceased in April or May, 1901, and that the deceased said "he had given Ned four or five hundred dollars, and that he had now got through, and what Ned got thereafter he had got to settle for." Mr. Ryder's testimony is to the effect that the deceased told him "he had always helped his boys, and that what he had given them was gone; he had given that to them; but that he had got through now." The deceased made no reference to any particular loan or obligation. This consists of all the evidence, in substance, bearing upon the payment or discharge of these notes. I think the intention of the deceased not to prosecute these claims is fairly inferable from these declarations, and I would be strongly disposed to carry out that intention in ordering distribution, if possible. There is no proof that the notes in question have been paid, and, of course, there must have been a gift by the deceased to the contestants of these notes in order to sustain their position. The courts have defined what elements are necessary to constitute a valid gift. In Beaver v. Beaver, 117 N. Y. 428, 22 N. E. 941, 6 L. R. A. 403, 15 Am. St. Rep. 531, the court says:

"The elements necessary to constitute a valid gift are well understood, and are not the subject of dispute. There must be on the part of the donor an intent to give, and a delivery of the thing given to or for the donee, in pursuance of such intent, and, on the part of the donee, acceptance. The subject of the gift may be chattels, choses in action, or any form of personal property, and what constitutes a delivery may depend on the nature and situation of the thing given. The delivery may be symbolical or actual; that is, by actually transferring the manual custody of the chattel to the donee or giving to him the symbol which represents possession. In the case of bonds, notes, or choses in action, the delivery of the instrument which represents the debt is a gift of the debt, if that is the intention; and so, also, where the debt is that of the donee, it may be given, as has been held, by the delivery of a receipt acknowledging payment. The acceptance also may be implied where the gift, otherwise complete, is beneficial to the donee. But delivery by the donor, either actual or constructive, operating to devest the donor of possession of and dominion over the thing, is a constant and essential factor in every transaction which takes effect as a completed gift. Anything short of this strips it of the quality of completeness which distinguishes an intention to give, which, alone, amounts to nothing, from the consummated act, which changes the title. The intention to give is often established by most satisfactory evidence, although the gift fails. Instruments may be ever so formally executed by the donor, purporting to transfer title to the donee, or there may be the most explicit

declaration of an intention to give, or of an actual present gift; yet, unless there is delivery, the intention is defeated. Several cases of this kind have been recently considered by this court. Young v. Young, 80 N. Y. 438, 36 Am. Rep. 634," etc.

In the case at bar we have proof of the intentions of the deceased concerning the notes, but that is as far as the proof goes. There is no proof that the deceased ever gave or delivered these notes to the makers, or that he even told them that he had relinquished all right therein. Declarations that he never intended to require payment of the notes are not sufficient to constitute a gift without the delivery of the notes to the makers. To prove a gift, the makers are required to show that the gift was complete, with nothing left undone, with an actual delivery and acceptance of the notes, so that the donor parts with all right, title, and interest therein. There was no delivery in this case. In fact, according to Mr. Lewis' testimony, there was a positive intention not to surrender up the notes. No presumption in favor of the contestants arises from the fact that the deceased had not attempted to collect these notes in his lifetime. In fact, it appears in the proof that he stated that he could not collect them.

Leaving out the question of the statute of limitations, I do not think there is any doubt but what the deceased could have recovered judgment on the notes if the sole defense consisted of declarations of his intentions as submitted upon this hearing, for, he could have changed his mind as to collecting them at any time, and these declarations would be no defense.

I cannot see that the dealings which the deceased had with his other children, or compromises made with them, can have any legal bearing upon this case. The question is, did or did not the deceased give these particular notes to the contestants in his lifetime? If he did, then they should be stricken from the account. If he did not, then they must be deducted from the shares of the makers in the estate. Contestants' counsel urges that the fact that the notes were not delivered has no force, for the reason that the notes were outlawed prior to the death of the deceased, and that the notes were no longer representative of present obligations and had no value, and that the delivery would have been idle ceremony. I cannot agree with this view, however. The statute of limitations does not extinguish the debt, but merely bars an action thereon if it is pleaded. The debt remains, and the statute of limitations may be removed by payment being made upon the debt; and we have proof in the case (offered by contestants) of $50 having been paid to the deceased in February, 1899, by Charles A. Timerson, and this payment, of course, must be deemed to have been paid upon the indebtedness represented by his notes.

In view of the above, I think that the contestants have failed to prove either payment or a gift of the notes in question, and a decree may be entered dismissing the objections, and that the account be allowed as filed. Parties may move for further hearing upon notice.

Decreed accordingly.