EDWIN FRANK ET AL. *v.* CARROLL G. WAREHEIM, EXECUTOR.

[No. 34, April Term, 1939.]

44

*Decided June 28th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*George N. Fringer* and *Donald C. Sponseller,* for the appellants.

*D. Eugene Walsh,* for the appellee.

PARKE, J., delivered the opinion of the Court.

The record on this appeal is meagre. The questions arise on the administration of the estate of the testatrix, Amelia Snyder, by her executor, Carroll G. Wareheim. The will is not set forth, but sufficient facts are given to show that, after a conversion of all her real and per-

sonal property, the net proceeds were given in equal shares to her five nieces and nephews, Edwin Frank, Lydia Heindel, Amelia A. Bailey, Cora Heindel, and John Frank. After stating a first account, and making no distribution but retaining the residue in his hands for a further accounting, the executor completed his conversions and collections, and then stated his second and final account, in which he distributed the residue of the estate among the five legatees, who were entitled to equal shares.

Cora Heindel, one of the legatees, filed a claim against the estate of the testatrix for personal services rendered her in the sum of $3150. The Orphans' Court duly approved and passed the account by its *ex parte* order. Although the executor believed the estate was justly indebted to the claimant, he considered the amount of the account was excessive. Accordingly, he gave the claimant a written notice that the payment of this claim would be refused. After nine months from the time of the giving of the notice had passed and the claimant had not brought suit to recover her claim, the executor reported to the Orphans' Court that the claimant had agreed to accept the sum of $1000 in full settlement of her claim. The executor represented to the court that this was a fair and reasonable adjustment of the claim; and that he had no knowledge of any other unpaid debt of the estate. He further stated that he had ample funds in hand to pay this amount, and prayed the court to pass an order to authorize him to compromise the claim by the payment of the agreed amount. The court authorized and directed the settlement to be so made by the executor, and the money was paid.

Edwin Frank and Lydia Heindel, two of the five equal residuary legatees, later moved that the *ex parte* order of the Orphans' Court which sanctioned and directed this agreement be set aside and annulled on the ground that the claim was barred by the failure of the claimant to bring an action on the claim within the period of nine months from the time of the written notice of its rejection.

Before any action was had on this motion, the executor stated his second and final account in the Orphans' Court, and claimed an allowance for the $1000 paid to Cora Heindel in accordance with the authority given. In this administration account the executor brought in as part of the assets of the estate eleven notes which were severally given by the five residuary legatees to the testatrix; and one which the testatrix had paid as surety for the legatee Cora Heindel, and a certain Emanuel Heindel. The principal and interest of these twelve notes, which aggregated $8463.78, was first charged as part of the assets. After the deduction of the costs and expenses, commissions, and collateral inheritance tax, the residue was divided equally, and the respective notes of the several legatees credited as part of the whole share received. The two exceptants, Edwin Frank and Lydia Heindel, also objected to the inclusion in the account of the notes, and of the interest due thereon, as part of the estate, and to the allowance of commissions on these charges for the benefit of the executor. The grounds of the objections were that the executor had not collected or been paid anything, and, therefore, could neither charge as corpus any part of these uncollected and stale notes, and retain their respective amounts from the several shares of the distributees; and, further, that commissions could not be allowed on the basis of the inclusion in the estate of the principal and interest of the notes. These questions were all considered together in connection with the approval of the second and final account as stated and presented by the executor. After testimony before the Orphans' Court and a hearing, the court declined to annul its authorization and approval of the settlement of the claim of Cora Heindel for services to the decedent; and approved the account with reference to the disputed notes and to the basis for the computation of the commissions to the executor.

1. The exceptants rely upon the terms of section 110 of article 93 of the Code of Public General Laws in support of their position that the executor cannot be

allowed the $1000 paid to Cora Heindel in settlement of her claim against the estate. The section cited provides that if a claim shall be asserted against or exhibited to the executor or administrator in any form, whether sworn to or passed by the orphans' court, and he shall refuse payment thereof in writing, such claim shall be forever barred unless the creditor shall bring suit upon the same within nine months after such rejection. This language of the statute has been held to be a statutory bar, and not a statute of limitations, which may be waived. *Bogart v. Willis*, 158 Md. 393, 406, 148 A. 585; *Baker v. Cooper*, 166 Md. 1, 15, 16, 170 A. 556; *Davis v. Winter*, 172 Md. 341, 191 A. 902.

The use of the term "waived" is not intended to express the meaning that the executor or administrator may not later bind the estate to a payment of the claim either in whole or in part. In the appeal of *Bogart v. Willis, supra,* an illustration is afforded of the accuracy of this statement. In that opinion the decision points out that the statute is not the usual statute of limitations whose operation as a bar to the remedy may be variously obviated or abandoned, but a statutory bar which prevents the collection of the claim, unless the creditor shall bring suit on the claim within nine months of its rejection. 158 Md. at page 406, 148 A. 585. In that case a notice of rejection had been given which the court accepted, for the purposes of the decision, as a full compliance with the requirements of the statute. The creditor did not bring an action on the claim within the statutory period of nine months, but the court held the bar of the statute did not apply because, after the notice of rejection, the executors admitted to the creditor the obligation of the estate to pay the claim. While this admission was subsequent to the rejection of the claim, but before the expiration of the full period of nine months, action was not brought on the claim until after the expiration of the period of nine months. Thus the letter of the law was fulfilled to make the bar of the statute effective. The court held, however, that the subsequent admis-

sion by the executor of the creditor's claim had the effect of rescinding the notice given. The words of the court are: "Any other construction would permit a defendant to play fast and loose, and claim the benefits of the statute while at the same time leading the plaintiff to believe that he proposed to pay the claim." 158 Md. at pages 406, 407, 148 A. at page 590. Thus the court held and established the construction that the meaning of the language of the statute is not to preclude the operation of other principles of law. In *Bogart v. Willis, supra,* the fundamental basis of the ruling is the undertaking by the executors to pay to the extent of the assets available for the purpose a debt of the testator to the creditors. The contract was implied from the acts of the executors under the facts and circumstances, and the consideration for the promise of the executors was the claim of the creditor and the obligation of the executors to use the assets in their hands for the benefit of the creditor.

So, in the record now before the court, an analogous case exists. No action was brought within the prescribed nine months, but the testimony tends to support the finding that, notwithstanding the notice, the creditor and the executor continued negotiations until an agreement was reached. The performance of the services and the liability of the testator's estate to pay were not the subjects of dispute, the only question was the worth of these services. The creditor and the executor could not agree on this single issue until the creditor agreed to lessen her claim from $3150 to $1000, and the executor promised to pay her that amount. The material difference between the two records is that in the case of *Bogart v. Willis, supra,* the promise to pay was implied while here it is express. In both instances, the personal representative was acting within the compass of his duty and power.

The statute expressly declares that an executor or administrator is not bound in duty to avail himself of the statute of limitations to bar what he believes is a just claim. The problem is left to his honesty and discretion.

Article 93, section 100 (vol. 3, p. 1220), sections 109, 110. On the other hand, he may reject and at law dispute the claim, if he should have reason to believe that the decedent never owed the debt, or had discharged it in whole or in part or had a claim in bar. Article 93, sections 101, 111. The assets of the estate must, however, be dedicated to the discharge of all just debts which are actionably known to the personal representative. If the assets be insufficient to pay all the creditors, a proportionable distribution is made among them. Article 93, sections 103, 105, 124, and sections 121 (Acts of 1823, ch. 131, sec. 2), 110 (Acts of 1920, ch. 674). Should the personal representative believe it to be his duty to reject or dispute a claim, he may retain in his hands sufficient assets to meet the contingency of an establishment of the demand. Article 93, section 112, of the Code.

In the pending appeal, it appears that, after having thus agreed to pay the creditor the sum of $1000, the executor invoked the power of the Orphans' Court to authorize and direct any executor or administrator to compromise any claim against the estate of his decedent in such manner as the court may approve; and, thereupon, the Orphans' Court gave the authority and direction requested. Code, art. 93, sec. 270; *Badders v. O'Brien,* 114 Md. 451, 79 A. 917; *Blum v. Fox,* 173 Md. 527, 536-538, 197 A. 117; *Williston on Contracts* (Rev. Ed.), secs. 160-164; sec. 693, pp. 2001, 2002; sec. 697. The executor then paid to the creditor the amount agreed. In this payment, and its approval by the Orphans' Court as an item for an allowance in the executor's account, the court discovers no error.

II. The five legatees share the residue of the converted real and personal property in equal portions. It is the clear intention that they should. The second question on the record arises from this and the further fact that, at her death, the testatrix held eleven paper writings against these five legatees, by which they severally agreed, under separate dates, and by distinct transac-

tions, to pay her specific but unequal amounts of money, with interest at the rate of four *per centum* yearly. The instruments are not found in the record, but they are called notes, and there is nothing to show that they are specialties. The number and aggregate amounts of the principal and interest of these notes ($8399.63) which were held by the testatrix at her death against the legatees, show the range of their inequality. Against Amelia A. Bailey she had three notes, whose principal and interest aggregated $1070.06; against Cora Heindel, one note whose principal and interest amounted to $1271.65; against John Frank, one note, principal and interest, $978.20; against Lydia Heindel, four notes, principal and interest, $3641.90; and Edwin Frank, two notes, principal and interest, $1501.97. The dates and maturities of these notes are not set out, nor when any payment was made, but the amounts and the uniform rate of four *per cent.* interest agreed, indicate interest had been accruing due on the eleven notes for varying periods from ten to eighteen years. The second question, therefore, is: Should the amounts of these notes be brought in and charged respectively against the residuary portions of the five legatees, although every one of the paper writings would be subject to the statute of limitations if an action were brought by the executor.

A sound author writes that "The Statute of Limitations does not operate to the extinguishment of a debt but bars the remedy only, therefore debts may in many States be deducted from or set off to legacies or distributive shares, notwithstanding the efflux of the statutory period of limitation." The rule is enforced against an assignee. 3 *Woerner on Administration,* sec. 564, pp. 1927, 1928; *Id.,* sec. 563, p. 1923; sec. 554, n. 7, 1883.

The cases cited in support of the text are: *Tinkham v. Smith,* 56 Vt. 187, 190; *In re Leitman's Estate,* 149 Mo. 112, 121, 50 S. W. 307; *Holden v. Spier,* 65 Kan. 412, 70 P. 348; *Noble v. Tait,* 140 Ala. 469, 37 So. 278; *Holmes v. McPheeters,* 149 Ind. 587, 49 N. E. 452; *Wilson v. Kelly,* 16 S. C. 216, 217; *Higgins v. Scott,* 2 B. &

A. 413; *Jeffs v. Wood,* 2 P. Wms. 128; *Courtenay v. Williams,* 3 Hare 539, 553; *Ex parte Wilson,* 84 S. C. 444, 66 S. E. 675. See *In re Cordwell's Estate,* 1875, L. R. 20 Eq. 644; *Rose v. Gould,* 21 L. J., N. S., 360; 18 *C. J.,* sec. 148, pp. 883, 884, sec. 252, p. 932. *Garrett v. Pierson,* 29 Iowa 304; *Skipwith's Succession,* 15 La. Ann. 209; *In re Timerson,* 39 Misc. 675, 80 N. Y. S. 639; *In re Bogart,* 28 Hun 466. See 1 *Roper on Legacies,* pp. 924-926; *Wood on Limitations* (4th Ed.), sec. 283.

The rule, however, is not held unanimously. In other jurisdictions the opposite rule prevails, that a debt due the estate by a legatee or distributee is unavailable as a set off if it is barred by the statute of limitations. *In re Schaeffer's Estate,* 1921, 53 Cal. App. 493, 200 P. 508; *Hesley v. Shaw,* 120 Ill. App. 92; *Holt v. Libby,* 80 Me. 329, 14 A. 201; *Allen v. Edwards,* 136 Mass. 138; *Lovell v. Nelson,* 11 Allen 101; *Boden v. Mier,* 71 Neb. 191, 98 N. W. 701; *Harod v. Carder,* 2 Ohio Dec. 274, 3 Ohio Cir. Ct. R. 479; *Appeal of Milne,* 99 Pa. 483; *Reed v. Marshall,* 90 Pa. 345; *Levering v. Rittenhouse,* 4 Whart. 130; *Richardson v. Keel,* 9 Lea (Tenn.) 74. See 16 *A. L. R.,* pp. 341-343; 18 *C. J.,* sec. 148, pp. 883, 884, sec. 252, p. 932; 24 *C. J.,* sec. 1317, pp. 487, 488, n. 34(1); 37 *C. J.,* sec. 150, p. 807, n. 82.

In Maryland the general rule is to retain out of a legacy or distributive share whatever the legatee or distributee owes the estate. *Manning v. Thruston,* 59 Md. 218, 228-230; *Gosnell v. Flack,* 76 Md. 423, 426, 25 A. 411; *Hoffman v. Hoffman,* 88 Md. 60, 40 A. 712; *Hoffman v. Armstrong,* 90 Md. 123, 44 A. 1012; *Julliard & Co. v. Orem's Excrs.,* 70 Md. 465, 471, 17 A. 333; *Hemsley v. Hollingsworth,* 119 Md. 431, 447 (even if the debt be discharged in insolvency, *Smith v. Donnell,* 9 Gill 84); and see *Gosnell v. Flack,* 76 Md. 423, 427-429, 25 A. 411; *Devries v. Hiss,* 72 Md. 560, 20 A. 131.

And this is true in the event the debt of the legatee or distributee is subject to the defense of limitations, provided the legatee or distributee is an executor or administrator of the decedent's estate. *Long v. Long,* 118

Md. 198, 201, 202, 84 A. 375; *Whiting v. Leakin,* 66 Md. 255, 266, 7 A. 688; *Julliard v. Orem's Excrs.,* 70 Md. 465, 471, 17 A. 333; *Sloan v. Sloan,* 117 Md. 141, 142, 152, 83 A. 38; *State, use of Stevenson v. Reigart,* 1 Gill 1, 32; *Brown v. Stewart,* 4 Md. Ch. 368; *Spencer v. Spencer,* 4 Md. Ch. 456; *Harlan v. Hunter,* 170 Md. 513, 517, 185 A. 327. See *Rose v. Buscher,* 80 Md. 225, 30 A. 637.

There seems no logical reason why the debt should not be retained in all cases, but on this point there is uncertainty. What then is the rule in Maryland, where the legatee or distributee, who is not an executor or administrator, is indebted to the estate on a debt which may be barred by the statute of limitations? In *Hemsley v. Hollingsworth,* 119 Md. 431, 446, 447, 87 A. 506, the bar of the statute of limitations was removed by the new promise made, so the point was not involved and so not decided. In *Watkins v. Harwood,* 1830, 2 G. & J. 307, a phase of the question was involved. The intestate died in 1826. In February, 1809, one of his distributees gave him a mortgage on personal property to secure the payment of a debt to the mortgagee. The debt became due and payable on January 1st, 1810, more than sixteen years before the mortgagee's death. It did not appear what had become of the perishable personal property mortgaged. There was no recognition of the debt at any time. No recovery could be had on the covenant in the mortgage, as it was barred by the statute of limitations. Accordingly, it was held that the mortgage debt on the specialty could not be retained from the distributive share of the mortgagor. The court noted the fact that the mortgage was not of real estate, and laid stress on the facts that the proceedings were against the personal property, which might have perished, or passed into the hands of the mortgagee, or continued to remain in the possession of the mortgagor. The peculiar circumstances pointed to the discharge of the debt rather than to its continued existence.

The decision cited is the only one which has been found on this point among the cases in the Maryland reports.

It exhibits some circumstances, which are extrinsic to the mortgage and which indicate a satisfaction of the debt. The length of time, without any recognition of the debt, and the complete extinction of the mortgaged personalty, warrant the inference that the debt had been discharged as well as the specialty had been avoided by the statute of limitations. *Miller v. Horowitz*, 172 Md. 419, 433, 191 A. 906.

The prime distinction of *Watkins v. Harwood, supra,* is that the evidence of the debt is a specialty, which expires at the expiration of twelve years after the debt or thing is in action. The statute is: "No bill, testamentary, administrative or other bond (except sheriffs' and constables' bonds), judgment, recognizance, statute merchant, or of the staple or other specialty whatsoever, except such as shall be taken for the use of the State, shall be good and pleadable or admitted in evidence against any person in this State after * * * the debt or thing in action is above twelve years' standing." Code, art. 57, sec. 3.

The construction of this section is different from that of section 1 of article 57 (Supp. 1935), because neither an acknowledgment of the debt nor an express promise to pay during the twelve-year period will arrest the operation of the statute in the case of a specialty, except to the limited extent specified in section 3. *Brooks v. Preston,* 106 Md. 693, 706, 68 A. 294; *St. Mark's Evangelical Church v. Miller,* 99 Md. 23, 26, 57 A. 644; *Wright v. Gilbert,* 51 Md. 146, 156; *Leonard v. Hughlett,* 41 Md. 380, 387; *Felty v. Young,* 18 Md. 163, 167. No action may be maintained on a specialty after the expiration of the statutory period. There must be an express promise to pay after the statute has become a bar, and such contract to pay is a new contract, and the action must be on the new contract, which, in turn, is barred after three years by virtue of section 1 of article 57. *Felty v. Young,* 18 Md. 163, 167; *Young v. Mackall,* 4 Md. 362, 367; *Veasey's Admr. v. Bassett's Admrs.,* 7 H. & J. 461. The specialty is dead, and its only function

is evidential, since it may be received in evidence, in a suit on the new contract, as tending to show a consideration for the new express contract. *Young v. Mackall,* 4 Md. 362, 372; *Young v. Mackall,* 3 Md. Ch. 398; *Brooks v. Preston,* 106 Md. 693, 706, 68 A. 294.

The distinction to be noted in those choses in action which come within the first section of article 57, and those which are within its third section, is that there may be recovery on the original contract in the first class, although barred by the statute of limitations, unless defendant sets up the plea of limitations, but on those within the second class, such as specialties, there can be no recovery on the original contract embodied in a specialty.

If there should be a recovery, it must be on a new and express promise, whose quality and independence is best shown by the fact that, unless it be a specialty, the new contract is itself within the first section, and without the third, and the applicable period of limitations is three years. *Supra.*

Thus it appears that the possession by the covenantee of a specialty, which is more than twelve years old since the right of action began thereon, is not evidence of a subsisting debt of the covenantor to the covenantee. If it cannot be accepted as tending to establish a present debt of the covenantor to the covenantee, the amount covenanted to be paid cannot be deducted from the distributive share or legacy of the covenantor in the estate of the dead covenantee. As thus limited, the decision in *Watkins v. Harwood, supra,* is not inconsistent with the retention of sufficient funds of the intestate's estate to pay in whole or in part a present debt of the distributee or legatee to the decedent, although the debt may be barred, if limitations could be pleaded.

It is submitted that, since the statute of limitations goes to the remedy and not to the debt or right of action, the better rule, in the absence of some contrary testamentary expression of intention, is that if the debt exists, it should be retained, although the plea of limitations

would be available to defeat the action. The present record is an illustration of the advantages of this rule.

The entire estate of real and personal property is converted, and its net proceeds are given to five persons, share and share alike. All of the members of this class of nephews and nieces are indebted to the testatrix according to written obligations which are found among her papers after her death. The fact that she held them at her death, uncancelled and unmutilated, is evidence that the obligations are unpaid. Since all are to share equally, the testatrix did not intend to prefer any above the others. The only way to insure equality is for all to pay what they owe, and, if unable to pay, to be charged with the amounts that they severally owe to the extent of their respective legacies.

Should the statute of limitations apply to the debts of any of the promisors, but not to the others, and be enforced, those who may plead limitations are preferred over those who cannot so plead, and instead of the five sharing equally in her estate, as she contemplated, inequality is introduced. The true and equitable rule would be to retain as against the debts of all who could not show that their obligations to the decedent had been paid. This is the reasoning and clear implication of *Smith v. Donnell*, 9 Gill 84, 86-90, where it is said:

"The doctrine, that in chancery equitable set offs will be allowed, where reason and justice require it, although not authorized by any statutory enactment, is so fully established, as to render unnecessary references to adjudications on the subject." 9 Gill at page 89. 2 *Williams on Executors* (7th Am. Ed.) 618-622. In *Waterman on Set-Off* (2nd Ed.), sec. 215, p. 247, it is stated: "In a suit by a legatee to obtain payment of the legacy, the administrator may retain so much of the legacy as is needful to satisfy a debt due from the legatee to the testator at the time of his death, although the remedy for such debt was, at the time of the death of the testator, barred by the statute of limitations." *Supra.* See 37 Harvard Law Review, 340, 341. The rule leaves open to

the respective distributees the opportunity to show that the indebtedness so evidenced never existed, or that it has been paid, or that which is claimed as an indebtedness is in reality a gift. *Long v. Long,* 118 Md. 198, 202, 84 A. 375.

The rule that the statute of limitations is ineffective against the retainer of the debt rests upon the sound principle that the statute only bars the remedy and, so, the debt is not extinguished. Since the debt subsists, it is the moral duty of the debtor to pay, and the right of the creditor is otherwise unaffected, and he may use any other means of enforcing his claim against the debtor, except those barred by the statute of limitations. Thus if the creditor or his executor or administrator have money in his hands which is payable generally by him to the debtor, the creditor or his representative may appropriate that money to the debt of the creditor by the retention of the requisite amount of such funds in the course of distribution. The retention is not a technical set-off, which is applicable to mutual demands, debts, and credits, but is, in substance, a retention of funds on the basis of the debtor's existing moral duty to pay the debt and to preserve equality where the debtor legatee or distributee is one of a class who are to share equally. 20 *Halsbury's Laws of England* (2nd Ed.), sec. 756, pp. 602, 603; *Carter v. White,* 1883, L. R. 25 Ch. D. 666, 672. See *Miller v. Horowitz,* 172 Md. 419, 430, 191 A. 906.

III. The final question concerns what constitutes the estate upon which commissions to an executor or administrator are computed. Before the passage of chapter 470 of the Acts of 1884, commissions were allowed on the amount of the inventory or inventories, excluding what was lost or perished. *Handy v. Collins,* 60 Md. 229. Since the enactment mentioned, the personal representatives shall receive "commissions which shall be at the discretion of the court, not under two per cent nor exceeding ten per cent on the first twenty thousand dollars of the estate, and on the balance of the estate

not more than two per cent." Code, art. 93, sec. 5. What constituted the estate within the meaning of the law came before this court in *Hardt v. Birely*, 1890, 72 Md. 134, 19 A. 606. In that case, a testator appointed his executor the trustee of his real and personal estate. The executor settled a first and final account, in which he charged himself with certain mortgages and other notes and debts due to the testator and, as these fell into the residue, they were distributed in kind to him as trustee. The executor was allowed commissions on the face value of the notes thus distributed, and exceptions were filed on the ground that it was illegal to include the notes as part of the estate upon which the commissions had been calculated. It will be observed that the executor had not collected the notes but had transferred them from himself as executor to himself as trustee. As there was no question that the notes were a part of the decedent's estate, and that their face value coincided with their real worth, the court held the executor was entitled to receive commissions on their full or face value. 72 Md. at pages 138-140, 19 A. 606.

The amount of the personal estate of a decedent is approximately indicated by the inventories and appraisements, and the list of debts returned by the personal representatives. Article 93, sections 211, 219, 223, 230-234, 253. The money and the personal property, which are inventoried and appraised, present no particular difficulty. A different problem is created by assets in the form of open accounts, bills and notes, and writings obligatory, receivable. The amount of such choses in action and private securities is a valuable part of the estate, but it is quite clear that it would be unjust to allow commissions except upon the sum collected on account of their payment, or upon the real value, if different from their face value, and they remain uncollected but are administered by transfer to the parties entitled. The statute deals with the problem in a practical manner, by requiring that the personal representative classify the debts in a provisional way, and thereby

make a form of appraisal. Thus the debts owing to the decedent must be returned, and the nature of every debt specified. The executor or administrator shall set down separately those which he shall deem sperate and those which he shall deem desperate and doubtful, but this listing does not make the personal representative answerable in all events for those debts which he shall designate as sperate, as the return is merely to enable the court and all parties concerned to form a just estimate of the circumstances of the decedent. The liability of the personal representative arises with reference to those debts which he has marked sperate and which he has not put in suit after the end of six months from the filing of the list of debts and a failure to pay by the debtor, unless the latter be out of the state, or unless the court shall think reasonable an excuse, made within one month after the lapse of the six-month period, for not bringing such suit. A failure to bring suit under the circumstances stated will make the personal representative liable on his bond for such damages as the jury may find was the result of his act. Code, art. 93, secs. 232-234, 237. With reference to the debts which have been accurately returned as desperate, the personal representative incurs no liability to account except if and when and as he receives payment on account of such debts.

As was held in *Hardt v. Birely*, 72 Md. at page 139, 19 A. at page 607: "The executor is to have commissions on the amount of the estate which comes into his hands in the course of administration, and with which he is properly chargeable, and for which his bond is responsible." Obviously desperate or valueless debts are not to be charged against the personal representative, except as to the amount actually collected in the course of his administration or such as was lost through a breach of his duty as personal representative. So, it may be said that the personal representative is entitled to be paid commissions on that part of the debts of the estate which he has or should have reduced into possession for

the benefit of his estate in the course of its due administration. If instead of administration through receipt and collection, the debts due the estate are, for value, assigned and transferred to purchasers, to legatees or distributees, or against them charged or retained, or to trustees or other fiduciaries, then the value of the debts so received, credited, or retained, and to be accounted for by the personal representative, is a part of the estate administered, wherewith the personal representative is properly chargeable, and for which his bond is responsible, and, consequently, commissions must be paid on this value. If such debts be fairly sold to a purchaser, the value of the debts is the purchase price. In the case the debt is one of the personal representative, of a legatee or distributee, the amount retained as a credit, in part or full discharge of the debt, would be the value of the debt accounted or accountable for by the personal representative. In the event of the transfer of the debt by assignment or delivery to a trustee, legatee, or beneficiary, distributee or next of kin, then the real value of the debt must be ascertained by appraisement or in some other more desirable manner, if the parties do not agree to take the debt at its face value. On this value so found, commissions are to be reckoned. *Hardt v. Birely,* 72 Md. 134, 138-140, 19 A. 606; *York v. Maryland Trust Co.,* 150 Md. 354, 359, 363, 133 A. 128; *Downes v. Safe Deposit & Trust Co.,* 164 Md. 293, 301-303, 164 A. 874; *Brown v. Tydings,* 149 Md. 22, 24, 25, 130 A. 337; *McKim v. Duncan,* 4 Gill 72, 86.

On the record here, the amount of the indebtedness of the several legatees retained in whole, in one instance, and in part satisfaction in the others, of the respective debts of the legatees of the estate is $7411.41, which, with the residue of $1054.37, remaining unpaid on the note of Lydia Heindel and distributed at its face value in four equal parts to the other four distributees, makes a total sum of $8465.78, for which the executor has accounted, and on which commissions were allowed. It

does not appear from the record that the residue of $1054.37 due on the note of Lydia Heindel for $900 to the testatrix was returned as sperate, nor that it has any value, so its inclusion in the distribution at its face value, after the credit given of Lydia Heindel's distributive share, and the allowance of commission on the residue of the note so distributed, were errors for which there must be a reversal. Under the facts of this record, the executor is only entitled to commissions to the extent that the application of the funds for distribution are retained in extinction and reduction of the respective debts of the legatees to the estate. If he did not so apply the funds in his hands as executor, he and his bondsmen would become liable to the distributees for any loss thereby sustained.

From what has been here decided, it follows that the action of the Orphans' Court in rejecting the exception to the allowance of the payment of $1000 to Cora Heindel in settlement of her claim as creditor, and the retainer of the amount of the respective indebtedness to the estate of the several residuary pecuniary legatees, notwithstanding the statute of limitations would be a bar to the recovery of such debts, must be affirmed. Because of the errors in distributing the residue ($1-054.37) of the note given to the testatrix by Lydia Heindel at its face value among the other four residuary legatees, and of allowing commissions thereon to the executor, the order of the court must be reversed in these respects. As the ground on which the reversal is made is for the common benefit of the residuary legatees, the costs will be charged against the funds.

*Order of Orphans' Court affirmed in part and reversed in part, and case remanded for further proceedings in conformity with this opinion. The costs to be paid out of the funds of the estate.*

OFFUTT, J., filed a dissenting opinion as follows, in which BOND, C. J., and SHEHAN, J., concurred:

I am unable to agree with so much of the court's opinion as allows to the executor commissions on the gross amount of debts due by the legatees to the testator. The executor collected no part thereof, but merely made a charge. He could recover not the full amount of the debt, but only the amount thereof less the legacy. His commissions should have been on the net amount distributable to the legatees, and not on the face value of uncollectible promissory notes.

I concur in the other views stated in the opinion.