## GUSTAVUS BEALL *vs.* LEVY HILLIARY.

One executor cannot file a bill in equity, against his co-executor, in order to compel the latter to account for and pay over to him, certain claims alleged to be due, from the defendant, to the estate of their testator.

THIS is an appeal, from a decree of Allegany county court sitting as a court of equity, in favour of the complainant, and directing the defendant, who was co-executor with the complainant of one B. Tomlinson, to pay over to the complainant a sum of money, supposed to be due from the defendant, to the estate of the testator.

The record is very large, and many questions were argued by the counsel. As however the court decided that the suit could not be sustained, nothing will be here said of the other points, which were elaborately argued.

The single question then is, can one executor sue in equity his co-executor, in order to compel the latter to pay over any claims against him, which may be supposed to exist?

This case was argued before LE GRAND C. J., and ECCLESTON, and MASON J.

*By T. J. McKaig,* and *McMahon,* for the appellant, and *Pearre* for the appellee.

*McKaig* for the appellant.

As our law is one executor cannot sue another at law or in equity. At common law, if a debtor of the deceased was made executor, the debtor was discharged, though otherwise in this State. See act of 1798, ch. 101, sub-chap., 8, sec. 20. This suit is in part for notes which were returned, as so much assetts due to the estate. One executor cannot sue the other. *Godolphin on Wills,* 135, 14 *Peters,* 165, 168. 12 *Serg. and R.,* 429. *2nd Devereux,* 51. 2 *Wms., on Executors,* 819, 1124, 1128, '9.

2 *Cowen* 807. At law the debt of executor was released, but equity made him a trustee for creditors and special legatees. 19 *John. Rep.,* 190.

*Pearre.* The authorities cited only prove that one executor cannot sue another *at law*, and this I admit. Williams in his *work on executors*, clearly shows, that in equity one executor can sue another. 2 *Wms. on Executors*, 1625. See 8 *Ohio Rep.*, 218. 13 *Vez.*, 262. 2 *Littels Rep.*, 321. 1 *Story's Equity*, 534, 543, 544.

This bill shows good grounds for a *quia timet.* Beall returned these notes in a list of debts, but does not bring them into the settlements with the orphans court.

Bills *quia timet.* 2 *Story's Equity*, sec. 828, 835, 836. The chancellor may appoint a receiver. Beall would not be responsible, after a decree that the money be paid over. Claiming an account, is sufficient to give jurisdiction. 1 *Story's Equity*, 442, 449, 450, 454.

It is said, that if the court had jurisdiction they could decree an account, and not direct the money to be paid over to the other executors. But when a court of equity takes cognizance of a case, it will give all necessary relief. 1 *Story on Equity*, 64, 456, 546.

There was no objection made to the jurisdiction below, See act of 1841, ch. 163. 1 *Gill* 356. There is, to be sure an exception to the audit, but that will not avail. 3 *G. & J.*, 504. 1 *Maryland Chancery Decisions*, 352.

*McMahon* for appellant.

The complainant is in court, expressly in the character of co-executor and in none other. Part of the claim is for the notes actually returned to the court, and are to be considered assetts.

There is no allegation that Beall is insolvent; or that the securities in his bond are not good. This is no question as to jurisdiction, but we insist that a co-executor has no claim against the defendant. Each executor has full power, equal, entire and independent, and there is no responsibility of one to the other. 8 *Law Lib.*, 329, 330. 2 *Williams on Executors*, 810, 819. *Godolphin*, 135. 14 *Peters*, 169. 19 *John.*, 190.

If the money claimed in this suit was so much received by Beall from a debtor, could the complainant, because his co-executor, claim it? Co-executor can collect, can retain, and can pay away. See the cases just cited, in 14 *Peters.* 19 *John.* See also 2*nd Devereux,* 56, 57.

One executor, though becoming insolvent, cannot be compelled to pay to his co-executor a debt which he owed to the estate. 10 *Peters,* 562. 1 *John. Ch. Rep.,* 52. 2 *Devereux,* 56, 57.

At one time, when a debtor was made executor, the debt was gone. Afterwards equity made him a trustee for creditors, legatees and next of kin. The debt is still gone, because it is considered as paid. 2 *Williams on Executors,* 1224 *and* 1227, 1228. *Hill on Trustees,* 171, 172. 17 *Eng. C. L. R.,* 343. 2 *Cow.,* 807, 810. 5 *Peters,* 313. 12 *S. and Rawle,* 429. 2 *Devereux,* 57. The one who owes the debt, has the debt paid to himself. Our act of Assembly, 1798, ch. 101, sub-ch. 8, sec. 20, has superseded the chancery proceedings in England. A proceeding of this description in the chancery court of England, was simply to account.

An executor is not suable in equity for a discovery. 4 *Gill,* 376.

The court below had no right to order the money to be paid over.

There are equitable grounds, it is said, to sustain this bill, such as that he did not include the claims in the administration account. He did not, it is true, charge himself with these claims. And why? Because this suit, brought by the man, in whose behalf the objection is made, was then pending.

A bill *quia timet.* No receiver is asked for, and this is no case for a receiver. *Story's Equity, sec.* 836. For upwards of $3600, Beall's bond is already liable, by his return. He cannot be made to pay over, and still more, he cannot be made to account here, because he has already done that in the orphans court. This, it will be noticed, is not a bill for a general account and settlement of the estate. See 1816, ch. 303, sec. 4. 6 *G. & J.,* 290.

If an executor has a claim in his own right, he may file a bill.

*Mr. M.* remarked upon 13 *Vez.*, 262.   2 *Littels Rep.*, 321. 8 *Ohio*, 218.   *Jurisdiction* means, I am liable to you, but not in this court.   To say, as in this case, that you have no claim against me, is not a denial of jurisdiction.   The act of 1841, authorizes the objection to the jurisdiction, if it appears in the court below.

The act of 1832, only relates to cases in which the party is entitled to relief.   This is not a case in which equity can give the relief which is sought.

ECCLESTON, J., delivered the opinion of the court.

The parties were executors of B. Tomlinson, deceased, and this suit was instituted for the purpose of compelling the appellant to account for, and to pay over to the appellee or into court, certain claims alleged to be due by the appellant to the testator.   The appellant denies that he is indebted.   And the first question presented in argument is, whether such a suit can be sustained; assuming, that at the decease of the testator, the appellant was indebted to him in the manner set forth in the original and supplemental bills.

It was long since the settled doctrine in England, that if a creditor appointed his debtor his executor, the debt was considered extinguished at law, for the reason, that the executor could not sue himself.   Not only did this principle prevail when there was a sole executor, but also if there were two, and one of them a debtor to the estate   As a consequence of this, it was held that the debt was paid, and was assets in the hands of the executor, who owed the money ; for which he was as much answerable, to the creditors of the testator, as if he had actually received that amount in cash, from any other person indebted to the estate.   2 *Wills. on Execr's*, 1124, 1126, *3rd Amer. Ed.*   At a later period in equity, it became an established rule, that an executor should be accountable for the amount of his debt, as assets, not only for the payment of debts, but also for the benefit of residuary legatees, and next

of kin.  2 *Wills on Execr's.*, 1128.  Still recognizing the principle, that the executor has paid to himself the debt due by him to the testator.  Thus entirely dispensing with any necessity for a suit to make the debt of an executor available as assets.

But independently of there being no necessity for a suit by one executor against his co-executor, to compel the payment of a debt due by him to the testator, it would be directly in conflict with the rights and powers of executors, over the assets.  Each without the concurrence of the other, possesses full authority to receive debts due to the testator; to give acquittances for the same; to make disbursements in the payment of debts; to sell a personal chattel, or leasehold for years, belonging to the testator; and to give receipts for the purchase money.  *Ram on Assets*, in 8 *L. L.*, 329 and 330. And in *Edmonds, et. al., vs. Crenshaw*, 14 *Pet.*, 169.  The Supreme Court say, that executors "are not liable to each other, but each to the *cestuis que trust*, to the full extent of the funds he receives."  This case also establishes the principle, that if one executor pays over to the other the whole of the assets in his hands, this will not exonerate the one so paying from his responsibility, to the creditors and others entitled to the estate of the deceased.  Believing these to be well settled principles, we cannot assent to the doctrine contended for on the part of the appellee.  Instead of tending to promote the settlement of estates in the most expeditious and economical manner, it would produce quite the opposite effect.

It cannot be denied that the rights of one executor are fully equal to those of the other, in regard to receiving, holding and disbursing the assets.  If therefore A has the right to sue B and recover from him a debt which he owed to the testator at the time of his decease, and which, by the operation of law, is paid, and in the hands of B, and equally subject to the claims of creditors, legatees and distributees, as any other debt, he has actually received from a debtor to the estate; it must necessarily follow, that B would be entitled to sue and recover from A any debt which he had received.

And according to this theory, there is no reason why B should not be able to compel A to pay back the money which B had just been obliged to pay.

In support of the appellee's right to sue, several authorities have been referred to ; which we propose to notice.

In 2 *Wills. on Excr's.*, 1625, it is said, that "although an executor cannot bring an action at law against a co-executor, yet in a court of equity, one executor may sue another." The reference in support of this position is, to *Allen vs. Story*, *Toth.*, 150. In the edition of 1820, this case is not on page 150 ; but on page 86 will be found the following statement : "One executor may sue another in this court, though not at law, *Allen contra Story*, in 1585, and *Okely and Bernard*, 39 *Eliz.*" What particular or special equitable circumstances may have existed in those cases, we are not informed. It may be, that the executors sued, had become insolvent, or were fraudulently colluding with the debtors to the estate, by giving receipts and releases, without receiving payment, or they may have been squandering the assets in some other way instead of properly applying them to the discharge of the claims of creditors. Such a loose and unsatisfactory statement as this, can have but little influence upon the question before us, especially as the authority of *Toth.*, is very much shaken in our estimation by the strong remarks of the distinguished Chancellor Kent in *King vs. Baldwin*, 2 *John. Ch. R.*, 558 and 559. On the latter page, the chancellor says, "this explanation of two cases is sufficient to show what little reliance is to be placed upon the loose notes of *Tothill*, which were collected and alphabetically arranged by him, in the shape of an index ; and published after his death."

In the case of *Rowe vs. Billing*, *p.* 89 *of Tothill*, it is stated, that "two executors being decreed to pay legacies and debts, the one paying it, the other shall, upon a bill, be compelled to pay the moiety and costs."

When in England, under a bill filed by creditors or legatees, the executors are called to an account in equity, the whole estate is there settled, and the amount due from the

executors is ascertained.    After one of them pays that amount, there can be no doubt of his right to compel the other to pay his share of that sum.    There is no longer any necessity for maintaining the right of the delinquent executor, to retain the assets for the purpose of disbursing them among the creditors and other claimants, for all such claims have been adjusted ; and the executor who has paid the amount of the decree, is entitled to demand of his co-executor, so much of the decree as he was rightfully bound to pay, but did not.

The case of *Lucas vs. Seal*, 2 *Ath.*, 56, is also referred to in *2nd Wills. on Excr's*, 1625.    In that case, one of the executors had given a mortgage to the testator, on which the bill was filed by the other executors for a foreclosure.    It was held that the application ought to have been for a sale of the estate, and not for a foreclosure, because the appointment of the mortgagor, as an executor gave him an interest in the mortgage.

According to the report by Atkins, the bill appears to have been filed, because the complainants were apprehensive that the morgagor was insolvent; and that the mortgaged premises might prove insufficient for the payment of the claim.    This case is more fully reported in *West's Ch. Rep.*, 556, where it is stated in note 1, to have been "taken from a manuscript report of Mr. Forrester, who agrees with the same case in Lord Hardwicke's note book."    Seale the defendant gave a mortgage to Elizabeth Gee for £500, who devised the mortgaged premises to the plaintiffs and defendant, and appointed them her executors.

The bill was filed by plaintiffs to compel the defendant to redeem; and if the mortgaged estate proved insufficient to pay the claim, that the defendant should make up the deficiency.

The master of the rolls referred it to the master to ascertain the amount due, and if paid, the plaintiffs were to reconvey; but in case of non-payment there was to be a foreclosure and sale of the mortgaged premises ; and if the proceeds of sale would not satisfy the claim, the defendant was to pay the balance.

The lord chancellor reversed this decree, because it went too far; and directed an enquiry to ascertain whether the mortgage was a good security, reserving all further directions. In deciding this case it was held by him, that "when a person is co-executor and debtor, the money is assetts in his hands." And also that he cannot be compelled to pay the money to his co-executors except under special circumstances.

In the case of *ex-parte Brown & another*, 1 *Drac. & Ch.*, 118, it will be seen, that if one of several executors becomes bankrupt, and before the bankruptcy, he receives a portion of the assetts, the other executors can obtain an order to prove the amount under the commission. But in 2 *Devereux Equi. R.*, 55 *and* 56, it is doubted whether even in a case of insolvency of one executor, the other can sue him in equity. It is not, however, incumbent on us to decide that question, as there is no charge of insolvency in the present suit.

In 1 *Spence' Equi. Jurisdiction of the Court of Chan.*, 585, the right of one executor to sue another, is asserted in general terms, and the reason assigned is, "because the matter is testamentary."

Reference is made to *Toth.*, as in 2 *Wills. on Exec'rs*, and also to the calendars in *Temp. of Hen.* 6, &c. We have not been able to see the calendar and are therefore entirely without information, as to the nature of the cases there to be found. In *note E, on page* 578 *of* 1 *Spence*, the subject of one executor filing a bill against another, is introduced; and upon the authority of the calendars in *Temp. of Hen.* 6, &c., it is said such bills were frequenty filed. None of the circumstances in the cases alluded to are given, except in regard to one. There, it appears, "one of the executors, in collusion with a debtor to the estate, released him, so that there were not sufficient assetts of the testator to answer the purposes of the will." The bill was filed against the executor and debtor. The main point in the case seems to have been, whether the release, although without consideration, was not a full discharge of the claim? The object of the bill must of course

25       v.1

have been, to compel the original debtor to pay the claim, notwithstanding the release. Although the transaction was of a fraudulent character, the chancellor gave leave for a se-.cond argument; but no decision was made. Why so, or how the case was disposed of, does not appear.

The principle stated by *Wills. on Executors,* and *Spence* is correct, there can be no doubt, under certain circumstances. But because one executor may sue another in some cases, it does not follow, as a necessary consequence, that the case before us is one in which it may be done.

In *Saunder's Heirs vs. Saunder's Exc'rs, 2 Littell,* 315, the heirs and devisees filed a bill in equity against the executors, to compel a settlement of the estate. Gatewood, one of the executors, claimed title to certain negroes in right of his wife, alleged by the complainants to constitute part of the estate of the deceased. To prove his right to the negroes, Gatewood produced in evidence the record of a judgment, in an action of detinue, instituted in the name of Gatewood and wife, against himself and the other two executors. Whether this record could be admitted as concluding the title, is the point discussed in that part of the opinion of the court, to which we were particularly referred, and will be found on pages 320 and 321.

In deciding against the record, the court say, "The law knows of no such action, and the only redress that one could have under such circumstances, is a suit in equity, to which the devisees, as well as the other executors, might be made parties, and a decree obtained, quieting the claim, exempting the executor claiming, from holding the estate in his fiduciary character, or accounting for the property." It is therefore apparent, that the real point before the court was, whether the record in detinue was available for the claimant under it? And what the court said as to a suit in equity, was an *obiter dictum.* But admitting that to have been a question directly in issue, it is not perceived how it could operate in favor of the pretentions of the complainant, in the case now before the court. There is nothing to sanction the right of one ex-

ecutor to sue for and obtain from another, any portion of the assetts belonging to the estate. The proceeding recognized by the court as proper, would be to prevent not only the co-executors, but the other parties having an interest in the estate, from compelling an executor to give up property supposed to belong to the estate, but which he claimed as his own. And the court take care to say, that in such a suit the devisees should be parties as well as the executors. So that if the decree should establish the right of the claiming executors, it would bar the devisees and discharge all the executors from farther responsibility, on account of the property, in their fiduciary character.

In this opinion, immediately following the remark in regard to the suit in equity, the court recognized the doctrine we have previously stated, "that executors, however numerous, are considered in law as one representative; and each has full power over the estate of the decedent." If so, how can one claim from another the assetts in his hands, in a case like the present?

In *Stiver vs. Stiver*, 8 *Ohio R.*, 217, the suit was in equity, by a surviving administrator, against the heirs and administrators *de bonis non* of a party, who with the complainant had been joint administrator of the original intestate. It appears clearly that a portion of the assetts were in the hands of the deceased administrator, among which was a note given by himself.

That under such circumstances, the surviving administrator would have the right to claim the assetts from the representatives of the deceased administrator, may perhaps be true. On the decease of one of two executors or administrators, the trust is vested in the survivor, who then has a right to the possession and disbursement of the assetts. But such a case is very different from the present.

*Simmonds vs. Gutteridge*, 13 *Ves.*, 262, is a case in which legatees filed a bill calling upon the executors to account. Application was made to have an interrogatory propounded to one of the executors, enquiring whether he did not owe a

debt to the testator. The application was refused by the master, but granted by the lord chancellor; who places the right to the interrogatory, upon the ground of its being at the instance of a defendant "having the fixed ascertained character of legatee," which would seem to exclude the idea that a co-executor, in that character alone, would have been entitled to the interrogatory, unless under circumstances of special equity.

The jurisdiction of a court of equity in testamentary affairs is asserted in 1 *Story's Equi.*, secs., 534, 543 *and* 544. The last of these sections, shows that an executor may call the creditors into equity, for the purpose of having their claims adjusted, and settling the order and payment of the assetts, when he finds the affairs of the testator in a complicated and embarrassed condition, so that he cannot safely administer the estate without the aid of the court. But in none of the sections of this learned and comprehensive treatise on equity jurisprudence, to which we have been referred, is it any where asserted that one executor can sue his co-executor for a debt due by him to the testator.

After a careful examination of the authorities relied upon in argument on the part of the complainant, we do not think they establish his right to maintain this suit. There is here no allegation of insolvency, or of any fraudulent or wanton wasting of the assetts, or any special grounds of equity, which can justify such a proceeding.

In *Clarke vs. Blount*, 2 *Devereux Equi. Rep.*, 51, an effort was made to charge several executors with a sum of money due by a co-executor to the testatrix; which co-executor had become insolvent after proving the will. The effort, however, was unsuccessful; and the court say, "This being a debt from the executor himself, due to the testatrix in her lifetime, became assetts in the executor's hands, upon her death, for the satisfaction of creditors and legatees. If he had paid it to the other executor, it would not have excused him to the creditors; and there ought therefore, to be no means of compelling such a payment."

In none of the authorities, where the facts are set forth, so as to afford an opportunity of forming any opinion as to the circumstances, have we met with a case which would justify a decree in favor of the complainant.

And in this State there is no necessity for now introducing such a principle, as a decree of that description would establish. For if a joint administrator or executor apprehends a loss from the neglect or misconduct of his co-administrator or co-executor, he may apply to the orphan's court, and obtain a revocation of the powers and authority of the delinquent party, if the court are satisfied that the apprehension is well founded.

And the orphans court have power, "to enforce by attachment and commitment, if necessary, the surrender and delivery to the remaining executors or administrators, of the assets of the estate, and of all books, accounts, papers and evidences of debt, of the estate, that may be in the possession or control of the person so dismissed from the administration." And authority is given to the remaining executors or administrators, by an action on the case, to recover for any loss or damage they may be subject to or suffer, by the executor or administrator, whose powers shall have been revoked. See *act of* 1816, *ch.* 203, *sec.* 4.

But it has been contended that the objection to the appellant's right to recover in this suit, is an objection to the jurisdiction of the court below, and was made too late. We do not think so. It is by no means clear, that if it was properly a question of jurisdiction, the objection was not in time. The defence set up is not based upon the ground, that the complainant having a right of action, has sought redress in the wrong tribunal. It is, that whilst the authority of the defendant, as an executor, continues unrevoked, the appellant has no right to maintain such a suit as this, and indeed has no cause of action against him in any court.

After deciding this point in favor of the appellant, it is unnecessary to say any thing in reference to the various matters of account set forth in the proceedings.

This court will therefore sign a decree reversing the decree of the county court and dismissing the bill, with costs to the appellant.

*Decree reversed.*