FISHER SLOAN *vs.* ELIZABETH B. SLOAN, one of
THE EXECUTORS OF REBECCA E. SLOAN, DECEASED,
AND IN HER OWN RIGHT, AND ISABELLA
H. SLOAN.

*Decedent's estate: distribution; debts; due by executor; admis-*
*sion of executor; right of legatee to sue; devise to*
*executor; abatement of debt. Orphans'*
*Court; issues to Court of Law.*

An appeal was taken from an order of the Orphans' Court
directing issues to be sent to a Court of Law to determine
whether one of the executors was indebted to the decedent
at the time of her death, and if so in what sum indebted.
By the agreement of the executors, it appeared that the tes-
tatrix by her residuary clause provided that all the residue
of her estate, including all debts due her at the time of her
death, should go to her two daughters and her son, to be
equally divided among them; and that an inventory of the
personal property had been returned to the Orphans' Court
and that there were in the hands of the trustees, subject to
distribution under the residuary clause, assets to the amount
of 55,000. *It was held,* that this constituted an admission
that there was in the hands of the executors, ready for dis-
tribution, the property mentioned, besides the debts due the
estate; that all costs of administration and debts had been

paid, and that the only thing to be done by the executors was to deliver and pay one-third of the estate to each of the legatees, whose right and title thereto was complete without any order or decree from the Orphans' Court.            p. 150

Specific legatees can recover at law from an executor individually, their respective shares of any. debt he may owe the estate.            p. 153

The question did not present the proper case for issues to be sent by the Orphans' Court to a Court of Law.            p. 153

When a testatrix bequeathes to a residuary legatee a part of the indebtedness due by the latter, his indebtedness is to that extent extinguished by the operation of law.            p. 153

*Decided January 9th, 1912.*

Appeal from the Orphans' Court of Baltimore City.

The cause was argued before BOYD, C. J., PEARCE, BURKE, THOMAS and STOCKBRIDGE, JJ.

*George Weems Williams* and *Frank Gosnell,* for the appellant.

*Thomas Foley Hisky* and *John Hinkley,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

The primary and substantial question in this appeal is whether the appellees have the right to have issues sent from the Orphans' Court of Baltimore City to a Court of law, under section 242 and 227 of Article 93 of the Code of Public Laws of Maryland.

It is admitted in the agreement filed as to the record, that Rebecca E. Sloan, the mother of the parties to this proceeding, died leaving a last will and testament duly admitted to probate, and that letters testamentary thereunder were granted to Fisher Sloan, the appellant, and. Elizabeth B. Sloan, one of the appellees, who were named as executors of

said will; that they both duly qualified as executors, being excused by the will from giving bond, and complying with the statute by giving bond for $200; that the testatrix by the first three clauses of her will provided for the payment of her debts and funeral expenses, and specifically bequeathed certain articles of personal property to her step-son, George F. Sloan, and to her two daughters, Isabella H. Sloan and Elizabeth B. Sloan, and by the residuary clause of her will provided as follows:

"Fourth: All the rest and residue of my estate, including all debts that may be due me at the time of my death, I give to my said two daughters, and my son Fisher Sloan, to be equally divided between them share and share alike."

It is also admitted in said agreement that an inventory was returned of the personal property of the decedent to the Orphans' Court of Baltimore City.

That by the first administration account, copy of which is in the record, there are in the hands of the executors, *subject to distribution* under the residuary clause of said will, stocks, bonds and cash amounting to upwards of $55,000.

That said agreement should take the place of, and be in lieu of the will, inventory and administration account, which it was agreed should be omitted from the record; and that the evidence adduced before the Orphans' Court at the hearing on June 12th, 1911, appears in the record.

Fisher Sloan, one of said executors, on March 16th, 1910, filed the following list of debts due the estate of his decedent:
"Obligation of Fisher Sloan, dated Baltimore, Dec.

8th, 1887, due on demand, interest payable monthly...................................... $10,200
Interest has been paid on the above to May 1st, 1908.
Obligation of George F. Sloan for $10,700, dated Dec.

12th, 1902, whereon $2,700 has been paid........ 8,000
Interest has been paid on the above to Jany. 1st, 1910.

Whole amount of debts due decreased............... $18,200
The usual affidavit being attached.

Elizabeth B. Sloan, co-executor with Fisher Sloan, on June 18th, 1910, excepted to the above inventory, on the ground:

1st. That the indebtedness of Fisher Sloan was not truly stated therein, in that the interest on said sum of $10,200 had not been paid to May 1st, 1908, and alleging that "she was informed and believed that for many years prior to the death of Rebecca E. Sloan in June, 1908, the interest of $612 was not paid annually in full, but only about $400 annually was paid thereon, and that for three years preceding June, 1908, the annual payments were considerably less than $400.

2nd. Because no indebtedness was returned of the firm of George F. Sloan & Bro. consisting of said George F. Sloan, and Fisher Sloan, and that she was informed and believed that said firm was indebted to said Rebecca E. Sloan at the time of her death and still was so indebted.

On June 23rd, 1910, Fisher Sloan answered said exceptions, alleging:

1st. That his said obligation of $10,200 represented that amount loaned to him by his mother to commence business in 1878; that from that time to 1886 he paid her interest thereon at the rate of 8 per cent. per annum; that from 1886 to 1898 he paid her interest thereon at the rate of 12 per cent. per annum; and that from 1898 to May 1st, 1908, he paid her interest thereon at the rate of 6 per cent. per annum.

2nd. That in the fall of 1907 he had an accounting with his mother for interest on said obligation down to January 1st, 1908, the amount then due being ascertained to be $512, which sum was then and there entered in a memorandum book of his mother's kept and then retained by her; and that on January 1st, 1908, he gave his mother a check for $512 in full for all interest to that date, being so written in the body of said check, and which check she held at the time of her death, without having indorsed the same being influenced by

the false statement of the exceptant that there was a larger sum then due for interest.

He also alleged that on April 2nd, 1908, he paid his mother $102 for interest thereon for January and February, 1908, and that on May 16th, 1908, he paid her another sum of $102 for interest thereon for March and April, 1908.

He denied all the allegations of the exceptant as to the insufficiency of his interest payments, and reiterated his former statements as to overpayment of interest, and declared that if the settlement with his mother in January, 1908, was resisted by the appellee, and it was judicially determined that he had paid interest in excess of 6 per cent. per annum on said loan, he reserved the right to claim any sum so paid in excess, to be credited on the principal sum.

3rd. He denied the existence of any indebtedness from the firm of George F. Sloan and Bro. to his mother and filed with his answer a transcript from the books of said firm, which he alleged showed payment in full of all indebtedness that had ever existed from said firm to her.

On March 6th, 1911, Elizabeth B. Sloan as one of the executors of her mother, returned a separate list of debts alleged by her to be due the estate, and returned as stated by her in compliance with order of the Orphans' Court dated March 3rd, 1911. This list of debts is so unusual as to the method of statement, that it is given in full as follows:

An inventory of all the debts due to Rebecca E. Sloan, late of Baltimore City, deceased, as appears by the books and papers left by said deceased, or which have come to the knowledge of Elizabeth B. Sloan, one of her excutors:

### 1—*Fisher Sloan.*

| | | |
|---|---:|---:|
| Obligation dated 8th December, 1887, due on demand with interest payable monthly............ | | $10,200.00 |
| Interest on same May 1, 1905, to may 1, 1908.............................. | $1,836.00 | |
| Less payments...................... | 404.00 | |
| | | 1,432.00 |

*Memorandum.*—A check was given by the said Fisher Sloan in December, 1907, for $512.00, which check is in possession of counsel of the executrix, but the same was not used by Mrs. Rebecca E. Sloan because it contained· the words "being interest in full to Jan. 1,.1908."

| | | |
|---|---:|---:|
| Interest on $10,200.00 from July, 1897, to May 1, 1905 | $4,794.00 | |
| Supposed to have paid on account about $400.00 a year | 3,133.33 | |
| | | 1,660.67 |
| Add interest on $10,200 from May 1, 1908. | | |
| Debit balance per account rendered July, 1897 | | 527.50 |
| | | $13,820.17 |

· This executrix believes that the above statment does not include the full amount of the indebtedness of the said Fisher Sloan to Mrs. Rebecca E. Sloan, but it is as accurate as she is now able to make it and she believes that on a full accounting between said Fisher Sloan and the said Rebecca E. Sloan .he would be shown to be indebted in a larger amount.

### 2—*George F. Sloan.*

| | |
|---|---:|
| Obligation for $10,700.00 dated December 12, 1902, whereupon $2,700.00 has been paid | $8,000.00 |

Interest paid on above to March 12, 1910.

### 3—*George F. Sloan & Bro.*

| | | |
|---|---:|---:|
| Difference in settlement in 1895 between a note of $5,000 and a settlement of $4,112.66 as per account rendered by Fisher Sloan July/97 | $887.34 | |
| Interest on portion of legacy to Mrs. Sloan from estate of James Watt on · $7,054.19, July 1, 1897, to July 1, 1899. | 846.48 | |
| July 1, 1899, to September 28, 1899.. | 102.28 | |
| On $2,091.69, September 28, 1899, to January 31, 1902 | 292.83 | |
| Error in Alexander Brown & Son's drafts. | 18.00 | |
| | | $2,146.93 |

The interest on the Watt estate money amounting to $1,241.59, if found to be an individual liability of Fisher Sloan instead of a firm liability would decrease the amount of indebtedness of the said George F. Sloan & Bro. and increase the amount of the indebtedness of Fisher Sloan individually.

Total.................................. $23,967.10

(Signed)'     ELIZABETH B. SLOAN,

One of the Executors of Rebecca E. Sloan.

Sworn to in open court March 6th, 1911.

HOWARD W. JACKSON,

Register of Wills of Balto. City.

Fisher Sloan filed exceptions to this separate list of debts on April 27th, 1910, denying 1st, that there was any debt due from him to his mother, because it appeared from a statement and account filed by him with his exceptions, that upon a proper accounting for overpayments at excessive rates of interest upon said loan of $10,200, there was due him from the estate of his mother, the sum of $9,025.99 for which sum he had proved a claim.

2nd. That there was any debt due from George F. Sloan to his step-mother, because upon a like proper acccounting upon said debt of $8,000, for excessive interest there was a considerable sum due to said George F. Sloan, for which sum he had duly proved a claim.

3rd. That there was anything whatever due to the estate of his mother by the firm of George F. Sloan & Bro.

Thereupon, Elizabeth B. Sloan on April 28th, 1911, filed a petition praying that the following issues be sent to the Superior Court of Baltimore City:

(1) "Was Fisher Sloan, one of the executors of Rebecca E. Sloan, indebted to the said Rebecca E. Sloan at the time of her death on June 26th, 1908?

(2) If the verdict of the jury should be in the affirmative on the first issue, what is the amount of the indebtedness of

the said Fisher Sloan to the estate of the said Rebecca E. Sloan at the date of your verdict?"

Fisher Sloan, in his own right, and as one of the executors of Rebecca E. Sloan, answered said petition, repeating his denial of indebtedness to said estate and his averment that upon a proper accounting said estate was indebted to him as shown by his claim proved.

He also averred that he took one-third of his mother's residuary estate, which was large, and that should it appear he did owe any sum to her estate, the Orphans' Court would have power to deduct such sum from his share of said estate, and he offered to submit the question of his indebtedness to said Orphans' Court, in accordance with his previous offer, and the expressed willingness of petitioners to accept said offer, from which position the petitioners had since withdrawn.

He also alleged he was advised it was not a proper case for issues and prayed that the petition therefor be dismissed.

On June 12th, 1911, the record shows the following proceedings in the Orphans' Court, viz.: "Tried before Justices Block, Gaither and Dunn."

June 12th, 1911, "* * * Petition read and opening statement made on behalf of petitioners by Mr. Hisky. Answer read and opening statement made on behalf of respondents by Mr. Gosnell. Mr. Hisky: We ask your Honor to consider the list of debts returned by Mr. Fisher Sloan and filed in this Court March 31st, 1910 (Reading inventory of debts returned by Fisher Sloan, one of the executors, *supra*)." * * * "Also list of debts returned by Elizabeth B. Sloan, one of the executors (*supra*) read."

Mr. Hinkley, of counsel for petitioners was then sworn on behalf of the petitioners, the subject of his examination and cross-examination, being the negotiations for the trial of all matters between the parties, before the Orphans' Court, but it is unnecessary to state this testimony in detail. The Orphans' Court ordered the issues submitted by the petitioners to be sent to the Superior Court of Baltimore City for trial and this appeal is from that order.

The appellant contends: 1st, that the appellees waived the right to issues in this case, if such right ever existed, by going into the trial of the case before the Orphans' Court, and offering evidence tending to prove the indebtedness they alleged.

2nd. That the second issue could in no event be properly submitted to a jury because it requires the jury to find what, if any, indebtedness exists *at the date of their verdict,* which would require them to determine not only the question of indebtedness, but all questions involved in the ascertainment of the amount of the appellant's share of his mother's estate.

3rd. That it would be idle to submit the second issue to a jury, because the appellant could not be required to introduce the question of usury, and as that question could be gone into by the Orphans' Court after the transmission of the verdict, the judgment rendered by the Orphans' Court, upon the presentation of that question, might nullify the verdict, and certainly would do so, if the appellant should establish the usury claimed, since the result would be to show that the estate was largely indebted to him.

4th. That the Orphans' Court is without jurisdiction to order the submission of these issues, because, whatever the indebtedness of the appellant may be, if any, it has under the explicit bequest in the residuary clause of Mrs. Sloan's will vested in the appellant and the appellees, and as the record shows that all debts have been paid, and the administration of the estate, *so far as the Orphans' Court is concerned,* has been fully completed.

In the view which we take of this case, it will not be necessary to consider any other contention than the last.

The agreement before mentioned expressly admits "that by the first administration account filed herein, it appears that there are in the hands of the executors, *subject to distribution under the residuary clause of the will of the said Rebecca E. Sloan, deceased,* stocks, bonds, and cash amounting to upwards of $55,000." This is in addition to any indebtedness due her from the appellant, but by the residuary

clause of the will she gave *directly* to her three children, not only the stocks, bonds and cash above mentioned, but also all debts due her at her death.　It necessarily follows from the admission that the stocks, bonds and cash are *now* subject to distribution, that all costs of administration, and all debts due from the estate have been paid, and the only thing to be done by the executors is to deliver to each of the legatees one-third part of the estate, all of which is now ready for distribution.　The situation is precisely the same (all debts of the estate being paid) as if she had specifically bequeathed to her three children the debt due her by the appellant at the time of her death, together with the stocks, bonds and cash mentioned in the agreement.　In this situaton, one-third of any indebtedness of the appellant is extinguished by the gift to him, and one-third is vested in each of the appellees, their right and title thereto being complete without any order or action by the Orphans' Court.

In *Kent* v. *Somervell,* 7 G. & J. 265, a testator bequeathed to Sarah H. Susan, and Ann Somervell, a single bill for $1,569 executed to him by Thomas T. Somervell, who was made executor of the will.　He delivered the single bill to the legatees, who assigned it in writing to John Somervell, and he assigned it to Kent the appellant, who brought suit thereon against the maker, not as executor, but in his individual capacity.　The Court below sustained a demurrer to the declaration, but the judgment thereon was reversed in the Court of Appeals, CHIEF JUDGE BUCHANAN saying: "A bequest by the obligee of a single bill, is an incohate transfer of the bill in writing, by a person authorized to make it, which, when assented to by the executor, is made perfect, and vests at law in the legatee, the bona fide title, or interest in the bill * * * and gives to the legatee the right to sue in his own name."

The assent of the executor is for his own protection, against liability to the extent of the assets, for the debts of the testator (*Clarke* v. *Sandrock,* 113 Md. 426), and an admission that the estate in hand is subject to distribution, is an admis-

sion that all debts are paid, and a practical assent to the bequest.

In *Handy* v. *Collins,* 60 Md. 245, this Court said: "Where there is a specific bequest of an individual bond or note, the sole duty of an executor in regard to it, where the money upon it is not needed for other exigencies of the estate, is to give his assent to the legacy and deliver the instrument to the legatee. By such assent and delivery the legatee is vested with the right to sue upon the obligation in his own name."

In *Biays* v. *Roberts,* 68 Md. 510, the case was this: JUDGE A. C. MAGRUDER died intestate in 1853 leaving two sons and two daughters. His son, John, administered on his estate, and his final account passed in 1858, showed a balance of $5,997 for distribution. John died in 1886 leaving all his property to his wife, and his executors renouncing, letters of administration were granted to Jos. K. Roberts. One of JUDGE MAGRUDER's daughters, Mrs. Biays, having died, the appellant, her son, administered upon her estate, and as such administrator filed a bill in equity in his own behalf, and of the other distributees of his grandfather's estate, against the administrator of John. To this bill a demurrer was sustained, and the order was affirmed on appeal, JUDGE MILLER saying: "The passage of this final acount (by the administrator of JUDGE MAGRUDER) was a complete settlement of his administration so far as the Orphans' Court was concerned. He was not obliged to state a distribution account, or make distribution under the supervision of that Court, though he could have done so, if he had chosen to protect himself and his bond by adopting that course. The law required him to make distribution, but he could have made it *in pais* without the order of any Court, if he chose to take the risk of paying the right amount to the right parties. *Conner* v. *Ogle,* 4 Md. Ch. 450; *Donaldson* v. *Raborg,* 28 Md. 55. As soon as this final account was passed, the parties entitled to shares of the surplus thereby shown to exist, could at once have demanded the same, and if he had refused or neglected to pay, could immediately have brought an action

at law against the administrator *individually,* or have instituted suit upon his administration bond to recover their
respective shares.  Such suits by parties entitled to distributive shares are of common occurrence in our Courts.  (*Shriver
v. State, use of Reister,* 65 Md. 282.)

In *Cream v. McMahon,* 106 Md. 507, which was an action
of ejectment for leasehold property specifically bequeathed
to A. for life with remainder to his issue, the title of the
legatee and remainderman was held valid where possession
was taken with the assent of the executor, and it was held not
necessary to show that the property had been distributed to
the legatee under an administration account by the Orphans'
Court.  In that case the following passage from an opinion
of JUDGE ROBINSON in *Matthews v. Turner,* 64 Md. 109,
was cited and applied: "The title of a legatee to property
specifically bequeathed does not depend upon the inventory
returned by the executor, nor does it necessarily depend upon
the orders of the Orphans' Court.  By the will itself, the
legatee gets an incohate title and when the debts are paid,
and the executor assents to the delivery of the property to
the legatees, the title is thereby perfected.  Nothing more
is necessary, and upon the title thus perfected, the legatee
may maintain an action of ejectment if the property be leasehold, or an action of trover for the conversion of personal
property".

The case now before us falls directly within the principles
decided in the cases cited above, and is in perfect analogy
with *Kent v. Somervell,* as to the facts.  The appellant Fisher
Sloan is alleged to have been indebted upon his certain obligation to Rebecca E. Sloan at her death, as Thomas T. Somervell was indebted to John Somervell upon his own obligation.
Each was made executor of the will of the decedent.  The
obligation of each was bequeathed to certain legatees, and in
each case the assent of the executor or executors, has been
given.  In each case the maker of the obligation so bequeathed
has become *personally* and individually liable to an action
at law by the legatees of that obligation to recover their

respective shares thereof.   There is no question here of a
suit by one executor or administrator against another, as in
*Beall* v. *Hilliary*, 1 Md. 186.

Fisher Sloan's one-third of this obligation is extinguished
by operation of law, and the two appellees can recover from
him individually at law, their respective third parts.

The question of the executor's right to commissions on any
indebtedness of the appellant could only operate to the preju-
dice of the appellees as they would be obliged to contribute
two-thirds, while the appellant would receive one-half of that
amount.   But if raised, it would be a proper question for
consideration in determining the amount due the appellees,
if any.

For the reasons stated the order will be reversed, but with-
out remanding, as we hold this is not a proper case for
issues.

*Order reversed, with costs to the appellant<br>above and below.*