JAMES MORFIT MULLEN, Trustee in Bankruptcy,
*v.* CHARLES E. MOORE et al.

[No. 64, October Term, 1928.]

 

 

 

*Decided January 16th, 1929.*

 

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter H. Buck* and *James Morfit Mullen,* for the appellant.

*Vernon Cook,* for Henry L. Moore and others, appellees.

*Harry E. Karr* and *Francis Key Murray,* submitting on brief, for Claude Ryland Moore, Jr., appellee.

SLOAN, J., delivered the opinion of the Court.

William H. Moore died November 13th, 1916, leaving a will and codicil thereto whereby, after making certain devises and bequests to his nine children, he left to his three sons, Henry L. Moore, Charles E. Moore, and William H. Moore, Jr., who were named as executors, the residue of his property in trust for his wife, Alice S. Moore.

One of the sons, R. Emory Moore, having died without issue and an advancement having been made to one of the daughters, and some of his insurance having been allowed to lapse, he executed a codicil whereby he left to his said executors and the survivors of them, "all the rest, residue and remainder of my property of every description, real, personal and mixed, and wherever situated, and whether now owned by me or hereafter acquired by me or in which I may have any interest, upon trust and confidence, to hold the same with full power and authority to sell, lease, mortgage or otherwise dispose of the same or any part or parts thereof and the proceeds thereof invest and the same sell again and reinvest upon the same trust as often as in their judgment shall be deemed advisable, and all necessary deeds and other papers execute and deliver and that without the purchaser or alienee being under any obligation to look to the application of the purchase money or other consideration for such alienation; and to manage and control the same and the clear net income thereof to pay over to my wife Alice S. Moore during so much of her natural life as she shall not again marry, and from and after her marrying again or death, whichever event shall first happen, this provision for her shall cease and determine and then I give, devise and bequeath this portion of my estate and property unto all and every my then surviving children and the issue of any deceased child to take among them, if more than one, *per stirpes* and not *per capita.*"

The will and codicil were duly signed and witnessed, and

were admitted to probate by the Orphans' Court of Baltimore. One of the sons, Henry L. Moore, declined to act as executor or trustee, and letters testamentary were granted to Charles E. Moore and William H. Moore, Jr., who gave bond and proceeded to settle the estate in the Orphans' Court. On August 17th, 1917, the executors filed their first and final account, wherein they charged themselves with $141,493.95, which included a balance of $6,700 on two promissory notes made by William H. Moore, Jr. (one of the executors), to his father, the testator. After deducting the expenses of administration and the legacies to the children, amongst which there appears to be none to William H. Moore, Jr., his father having devised a house and lot to him which was not accounted for by the executors, the residuary fund, amounting to $106,497.06, was distributed by the executors to themselves as trustees, and on the same day the orphans' court passed an order directing them, under the provisions of article 93, section 139, of the Code of 1904 (now section 144 of article 93 of the Code of 1924), to make a conveyance to themselves as trustees of the property so distributed. Included in the property distributed to the trustees, and thereafter held as an investment of the trust, were the notes of William H. Moore, Jr., to his father, at the balance of $6,700. The executors were allowed and paid commissions amounting to $3,986.90.

On February 8th, 1918, the trustees filed their petition in the Circuit Court of Baltimore City, praying the court to pass an order assuming jurisdiction of the trust created by the will of William H. Moore, and on the same day an order was passed assuming jurisdiction as prayed, and the trustees ordered to file separate bonds in the penalty of $110,000. The petition recited that the trustees had in their hands the property appearing in the executors' account as distributed to the trust, and, in addition thereto, several parcels and tracts of land situate in this state. Charles E. Moore resigned as trustee on May 25th, 1920, and from that date William H. Moore, Jr., acted as sole trustee, had possession of the corpus of the estate, collected the income from time to

time, and, down to the death of his mother, Alice S. Moore, on April 23rd, 1927, paid the income to her, and from the date of her death made no distribution of corpus or income to any of the distributees except an advancement to Charles E. Moore on July 18, 1927. William H. Moore, Jr., was adjudicated a bankrupt on December 6th, 1923, and J. Morfit Mullen, the appellant, was appointed his trustee.

On November 23rd, 1927, Claude R. Moore, Jr., grandson of the testator, William H. Moore, filed a petition in the Circuit Court of Baltimore against the surviving children of his grandfather and against the appellant, praying the court to retain jurisdiction of the estate for the purpose of settlement and distribution amongst those entitled thereto, and to appoint a trustee or trustees to make sale or sales of all or any part of the estate as may be necessary for such purpose, and, by decree passed January 9th, 1928, J. Talbot Tod and William H. Bean were appointed such trustees.

The auditor's report shows a distribution to each of the distributees of $17,218.21, the share of William H. Moore, Jr., being reported in the following form:

7. To Wm. H. Moore, payable to J. Morfit Mullen, trustee in bankruptcy of said Wm. H. Moore, formerly known as Wm. H. Moore, Jr., 1/8th part thereof, consisting of—

| | |
|---|---|
| 9 shs. Piedmont Mt. Airy Guano Co. Pfd. | $225.00 |
| 6 shs. Piedmont Mt. Airy Guano Co. Com. | 150.00 |
| Note of Wm. H. Moore | 5,000.00 |
| Note of Wm. H. Moore | 1,700.00 |
| And in cash, $10,143.21 | 10,143.21 |
| | $17,218.21 |

$10,143.21

Less amount of interest due by this share, shown contra.... 361.80

$9,681.41

The appellant filed exceptions to the auditor's account, the grounds being, (1) that the promissory notes of Wm. H. Moore, Jr., to his father, amounting to $6,700, are not a proper charge against the share distributable to the exceptant; (2) that the interest after April 23rd, 1927, on the notes, was not chargeable to his share; (3) and (4), repetitions in substance of (1) and (2); (5) other reasons to be shown at the hearing.

The chancellor passed an order dismissing the exceptions and ratifying the auditor's report and account, and it is from this order the appeal is taken.

It was testified and not disputed that down to July, 1917, William H. Moore, Jr., was solvent. The contentions of the appellant, as stated in his brief, are: (1) The notes of Wm. H. Moore, Jr., to his father became cash in the hands of the executors and were extinguished. (2) The executors' bond became liable for the failure of the executors to account for the notes as cash. (3) The executors' bond became liable for executors' commissions paid to William H. Moore, Jr. (4 and 5) On the death of Alice S. Moore the assets of the estate passed to the parties entitled as tenants in common, and as a tenant in common with the others entitled under the will of William H. Moore the appellant, as trustee in bankruptcy of William H. Moore, Jr., was entitled to one-eighth part of the net value of the whole estate, without any deduction from his share on account of the bankrupt's indebtedness to his testator. (6) Upon the death of the life tenant the appellant became vested with a lien upon his aliquot share of the estate.

The law applicable to the first and second propositions is section 235 of article 93 of the Code of 1924, which is: "The bare naming an executor in a will shall not operate to extinguish any just claim which the deceased had against him; but it shall be the duty of every such executor accepting the trust to give in such claim in the list of debts; * * * and if the executor shall give in such claim, * * * he shall account for the sum due in the same manner as if it were so much

money in his hands, and on failure his bond may be put to suit."

It is apparent that what the statute says, and the appellant contends should have been done, was done. The executors did "give in" the debt of William H. Moore, Jr., to his father, the testator, "in the list of debts," and it was accounted for "in the same manner as if it were so much money in his (their) hands," and was distributed as part of the corpus of the life estate to his mother. There were no creditors to be satisfied, and the only persons concerned were the mother, and the brothers and sisters of the executors, and nowhere does it appear that they objected to the executors' account or to the inclusion of the note in the corpus, or the trust. It does appear that, for some time after the transfer of the estate to the trustee, William H. Moore, Jr., paid the interest on his notes to his mother, and that for a long time before her death she forgave him the interest and did not require him to pay. The others may have been indifferent, because of their belief that the share of William H. Moore was so much in excess of his debt that their shares could not be affected by his failure to pay his notes. The appellant cites, as the leading authority in this state for his contention, the case of *Lambrecht v. State*, 57 Md. 240. In that case the executor, who was not a legatee, was indebted to the estate and one of the legatees sued his surety. The defense, and the only question involved, was the insolvency of the executor, and this court decided that adversely to the contention of the surety. Afterwards, by Act of 1884, ch. 381, this provision, now section 236 of article 93, was amended so as not to hold the surety liable if a debtor executor or administrator "shall have been insolvent or unable to pay his debts at the time of his qualification."

Assuming, but not deciding, that the distributees' interests under the will would not vest until at the death of the life tenant, the unsatisfied debt of any son or daughter dying before his or her mother might have been at the expense of the estate. But that situation has not developed here, and therefore cannot be decided in this case. The executor's surety is

not a party to this case, and as it is the only one concerned, we cannot express an opinion as to the appellant's third proposition.

There is only one question involved in the fourth, fifth and sixth propositions argued by the appellant, and that is, whether the distributive share of William H. Moore, Jr., in his father's estate is subject to his debt to the estate, or the whole estate should be converted into cash and the net sum so realized divided into eight equal parts, one of which should go to the appellant. The latter suggestion was rejected by the court in *Smith v. Donnell,* 9 Gill, 84, and the former asserted as the law of this state in an opinion which has been followed without variation in *Devries v. Hiss,* 72 Md. 560; *Gosnell v. Flack,* 76 Md. 423; *Hoffman v. Armstrong,* 90 Md. 123; *Armiger v. Reitz,* 91 Md. 334; *Hemsley v. Hollingsworth,* 119 Md. 431, 447.

The appellant insists that this case is controlled by the decision in *Flack v. Gosnell,* 76 Md. 88, where the parties were tenants in common of real estate which they had inherited. One of them had collected rents for which he had not accounted. A bill for partition and sale had been filed which prayed that the interest of James W. Flack be subjected to the satisfaction of their respective shares of the rents collected by him. This court held that could not be done. The distinction between that case and the instant case is that in the former case the debt was owing by one of the cotenants to the others, while here the debt was owing to the testator in his lifetime, and was charged against the distributive share of one of the distributees as an indebtedness due the estate, so as not to impair the distribution to the others. *Gosnell v. Flack,* 76 Md. 423, 427.

The appellant asserts it as his belief that if William H. Moore, Jr., had remained solvent to 1928, when Messrs. Todd and Bean, trustees, filed their distribution account, he could have demanded and would have been entitled to receive his full share, without deduction for his note due the estate, and the other distributees would have had recourse only against him personally for their respective shares of the estate, on the

theory that "his obligation was extinguished by operation of law," and the appellant cites *Sloan v. Sloan,* 117 Md. 141, 153, as his authority. But that case is not this. In the *Sloan* case the fourth item of the will was: "All the rest and residue of my estate, including all debts due me at the time of my death, I give to my said two daughters and my son, Fisher Sloan, to be equally divided between them, share and share alike," and of this item, on the authority of *Kent v. Somervell,* 7 G & J., 265, the opinion of the court (p. 150), said: "In this situation, one-third of any indebtedness of the appellant is extinguished by the gift to him, and one-third is vested in each of the appellees, their right and title thereto being complete without any order or action by the Orphans Court." The appellant, notwithstanding the amendment to the Bankruptcy Act of 1910, is not entitled to receive any greater sum from the estate than the bankrupt, if solvent, could receive. This court said, in *Jones v. Dugan,* 124 Md. 346, 350, the amendment of 1910 "does not vest in him any right in property which the bankrupt himself could not have claimed." *Smith v. Donnell,* 9 Gill, 84, 88; 2 *Collier on Bankruptcy* (13th Ed.) 1058, says that, under section 70 (with which the amendment of 1910 is to be construed), "the trustee is vested by operation of law with the title of the bankrupt as to all property which belonged to him in his own right, and he takes the same, not as an innocent purchaser, but subject to all valid claims, liens and equities." *In re Purvis,* 293 Fed. 102.

There was some controversy in this case as to whether the interest of William H. Moore, Jr., in the trust estate was a vested or contingent remainder, but inasmuch as the result to William H. Moore, Jr., would be the same in either event, we see no occasion to decide this question. The only question before us is as to the right and the duty of the trustees to deduct the debt due the estate from William H. Moore, Jr., from his distributive share of his father's estate. The one to whom he owed the money was the one under whose will he took, and his share of the estate was subject to his debt to the same estate and that whether his interest was vested or con-

428

tingent. Nothing had occurred from the time of his father's death to that of his mother to alter or defeat his rights under the will as a distributee, and no change had been made in his obligation or relationship to the estate.

It is the opinion of this court that the appellant has been allowed by the auditor's account all he is entitled to receive, and the order of the chancellor will be affirmed.

*Order affirmed, with costs to the appellee.*